TOWNSHIP OF SUPERIOR *v.* REIMEL SIGN COMPANY.

1. Appeal and Error—Wrong Reason for Right Result.

  The Supreme Court does not disturb the result reached by a trial judge who reaches the right result but for the wrong reason.

2. Townships—Zoning—Barnside Advertising.

  Use for large advertising sign on side of barn which defendant sign company had leased from the defendant owner constituted a commercial use of the property forbidden in agricultural and residential zone in township in which it was located (Superior Township Zoning Ordinance § 9.01).

3. Same — Zoning — Noncommercial Districts — Barnside Advertising.

  A township may forbid the commercial use, including barnside advertising, of property in a noncommercial district.

4. Same—Zoning Ordinance—Advertising Signs—Temporary Permit—Standards.

  Fact that provision of township zoning ordinance permitting board of appeals to issue a temporary permit for advertising signs failed to provide a standard for the exercise of discretion vested in the board, and perhaps, therefore, unconstitutional, would not serve to invalidate provision of the ordinance prohibiting commercial uses of property not specifically permitted by the ordinance in agricultural and residential zones (Superior Township Zoning Ordinance §§ 9.01, 9.05).

---

References for Points in Headnotes

[1] 3 Am Jur, Appeal and Error § 825.
[2–4] 37 Am Jur, Municipal Corporations § 312; 58 Am Jur, Zoning § 74.
  Municipal power as to billboards and outdoor advertising. 58 ALR2d 1314.
[5] 3 Am Jur, Appeal and Error § 1169.

5. APPEAL AND ERROR—AFFIRMANCE WITHOUT PREJUDICE—AMEND-
   MENT OF ZONING ORDINANCE.

   Affirmance of decree enjoining continuance of barnside advertis-
   ing sign in contravention of township zoning ordinance is made
   without prejudice to rights to apply for a permit under subse-
   quently amended ordinance if it provides for exceptions to
   flatly prohibitory provisions (Superior Township Zoning Or-
   dinance §§ 9.01, 9.05).

Appeal from Washtenaw; Arch (Charles O.), J.,
presiding. Submitted June 9, 1960. (Docket No.
32, Calendar No. 48,434.) Decided February 28,
1961.

Bill by the Township of Superior, a municipal
corporation, against Reimel Sign Company, a Michi-
gan corporation, and Carl W. Bernard to enjoin
maintenance of an advertising sign contrary to zon-
ing ordinance. Decree for plaintiff. Defendants
appeal. Affirmed.

*William R. Kelley,* for plaintiff.

*Harry D. Fenske* and *Bishop, Keller, Thoma &
McManus,* for defendants.

EDWARDS, J. In this case plaintiff township by
bill of complaint in equity seeks to enforce its
zoning ordinance against defendant sign company
which painted a large advertising sign on a barn
under lease from defendant Bernard. The defenses
presented below and here are that the ordinance did
not forbid this sign, and that anyway it was uncon-
stitutional.

The facts were stipulated and we quote the rele-
vant portions:

"1. That plaintiff is an unchartered township,
legally organized as a municipal corporation exist-
ing and acting under and by authority of the Con-
stitution and statutes of the State of Michigan.

"2. That defendant, Reimel Sign Company, is a Michigan corporation authorized to do business in the State of Michigan, and that defendant Carl W. Bernard is a resident of Superior township, Washtenaw county, Michigan, and owns property in Superior township at 10165 Ann Arbor road.

"3. That plaintiff enacted section 9.05 of an ordinance entitled 'Superior township permanent zoning ordinance' on April 3, 1951, which ordinance is attached hereto as plaintiff's exhibit A. (See, also, sections 9.01 and 11.01.)    *   *   *

"5. That the property of the defendant, Carl W. Bernard, is in AG–1 (agricultural district, as defined under the provisions of the permanent zoning ordinance of Superior township.)

"6. That defendant Reimel Sign Company, painted a wall sign designed for advertising on a barn at 10165 Ann Arbor road, said barn belonging to the defendant, Carl W. Bernard, and that the wall sign was so painted and placed there without making an application to the board of zoning appeals. It is further admitted that the wall sign in question does not require a permit under the building code, ordinance No 3 of Superior township, but that a permit for said sign is required under section 9.05 of the zoning ordinance of Superior township.

"7. That defendant, Reimel Sign Company, on the suggestion of George W. Matthews, zoning inspector of Superior township, after the sign was painted and on February 27, 1958, made application to the board of zoning appeals, which application was not considered for the reason that the sign had been painted prior to application being made."

Among the legal issues likewise stipulated were these:

"1. Did defendants violate section 9.05 of the Superior township permanent zoning ordinance?

"2. Is section 9.05 of the Superior township permanent zoning ordinance unconstitutional and void under the Constitution of the United States of

America and under the Constitution of the State of Michigan by reason of its failure to provide standards by which the board of appeals may exercise its authority in issuing or denying permits? * * *

"4. Is defendant, Carl W. Bernard, in violation of section 9.01 of said ordinance by conducting a business not permitted under said section?"

After viewing the premises and hearing oral arguments, the chancellor dictated an opinion holding that defendants had not violated section 9.01 but had violated section 9.05, and that said section 9.05 was not unconstitutional. He thereupon granted a decree enjoining the maintenance of the sign, and requiring its removal. On motion for rehearing, the chancellor expressed some doubts about the reasoning in his first opinion, but added:

"The Supreme Court time after time has said that we may not agree with the way the court reached its opinion but we think the opinion was correct."

In this, he was prophetic. *Straith* v. *Straith,* 355 Mich 267, 275.

Section 9.01* places defendant Bernard's farm in an AG–1 agricultural district.

---

* "Section 9.01. Uses permitted.

"No building or part thereof shall be erected, altered or used, or land used, in whole or in part for other than 1 or more of the following uses:

"1. Farms, including both general and specialized farming, country estates, and similar agricultural enterprises, but not including premises operated for the disposal of sewage, rubbish, garbage or offal, or for rendering plants. Upon land areas of less than 4 acres no domestic animals except household pets may be kept. Raising and keeping of fowl and rabbits may be permitted provided they are properly housed and maintained.

"2. Farm dwellings, farm buildings, and structures including roadside stands.

"3. One-family detached dwellings other than farm dwellings.

"4. Home occupations.

"5. Churches, schools, parks, cemeteries, picnic groves, playgrounds, golf courses, and similar activities for outdoor recreation and exercise, community and organizational buildings, nurseries, greenhouses, airports, landing fields, hospitals. riding stables, livestock auction yards, mines, quarries, and gravel pits, provided, however, that the location,

The uses permitted by section 9.01 are generally agricultural and residential. It is plainly designed to provide for a noncommercial zone. The only provision pertaining to signs contained therein is subsection 8 which permits:

"One nonilluminated sign not over 9 square feet in area advertising the sale of products produced on the premises."

No claim is made or could be made that the instant sign was permitted under this language. Defendants' answer admits that the "Reimel Sign Company painted a wall sign design for advertising on a barn."

The chancellor, after viewing the premises, described the situation thus:

"The defendant sign company one year or a year and one-half ago painted a sign on the end of one of the barns owned by the defendant Mr. Bernard at 10165 Ann Arbor road, and this sign is what might be referred to as a wall sign. Actually, the court understands it is painted directly on the siding of the barn and faces at a right angle approximately to the road. In other words, when you are coming from Plymouth on this road and going toward Ann Arbor, the sign is plainly visible for some distance down the road and until you reach a point approximately opposite or equal to the buildings of the defendant, Mr. Bernard."

erection and use shall first have been approved by the zoning board after public notice given in a newspaper · of general circulation in the township of a statement of the proposed use and location and the time of a hearing thereon. If, on such hearing, it shall appear that the proposed location, erection or use be detrimental to the public health, safety or general welfare, or to the character of the neighborhood wherein it is proposed to locate such use, then such use shall be denied.

"6. Accessory uses, buildings and structures customarily incidental to any of the above permitted uses.

"7. Carnivals, outdoor circuses and similar migratory amusement enterprises subject to board of appeals. (See section 13.02 I.)

"8. One nonilluminated sign not over 9 square feet in area advertising the sale of products produced on the premises."

He further found that the sign was "well painted," but that it "stands out * * * as the proverbial sore thumb."

From these facts it appears to us that as far as section 9.01 is concerned, the sign was clearly a commercial use forbidden in the agricultural and residential zone in which it was located. We know of no reason why a township ordinance may not forbid this as well as other commercial uses in a noncommercial district. This Court has previously held:

"The city may establish zones and prohibit the erection of billboards therein and may, to promote public health, safety and general welfare, within reasonable considerations, regulate the maintenance of billboards." *Wolverine Sign Works* v. *City of Bloomfield Hills,* 279 Mich 205, 208.

See, also, *Rockingham Hotel Company* v. *North Hampton,* 101 NH 441 (146 A2d 253); *Thomas Cusack Company* v. *City of Chicago,* 242 US 526 (37 S Ct 190, 61 L ed 472, LRA1918A, 136); *City of New Orleans* v. *Levy,* 223 La 14 (64 So 2d 798); *Murphy, Inc.,* v. *Town of Westport,* 131 Conn 292 (40 A2d 177, 156 ALR 568); annotation 156 ALR 581.

The relief granted by the chancellor should have been founded on this portion of the ordinance, namely, section 9.01.

However, at the hearings below, and here, defendants based their arguments as to unconstitutionality primarily upon a provision which, as an exception to section 9.01, purports to provide for "temporary" permits for signs:

"Section 9.05—Signs—'Billboards'.

"Signs will not be permitted in district AG–1 except under a temporary permit from the board of appeals which may be denied or issued upon the filing of an application accompanied by a suitable agreement or bond."

As to this section, appellants contend that it is unconstitutional because it provides no standards for the exercise of the discretion vested in the board of appeals. This Court has previously held, in relation to a somewhat similar provision making it entirely discretionary for a zoning board of appeals to issue or refuse permits for gasoline stations:

"The ordinance presented is fatally defective. The zoning board of appeals is simply given authority to permit, and obviously to refuse to permit, the erection of gasoline stations after public hearings. But what standards prescribe the grant or rejection of the permission? We find none.   *   *   *

"Without definite standards an ordinance becomes an open door to favoritism and discrimination, a ready tool for the suppression of competition through the granting of authority to one and the withholding from another. Such charges, in fact, were made in the case before us, another service station having been permitted on a nearby property." *Osius* v. *City of St. Clair Shores,* 344 Mich 693, 700 (58 ALR2d 1079).

There is, however, a major distinction between the facts of that case and the present one. In *Osius,* the property which plaintiffs sought to use for a gasoline station was in a commercial zone where gasoline stations were permitted. In our instant case, this advertising sign was located in a noncommercial zone where such signs were prohibited.

If we agree with appellants that section 9.05 is unconstitutional and void (see *Osius, supra*), this holding is of little benefit to them since it leaves untouched the prohibition contained in section 9.01. See *Thomas Cusack Company* v. *City of Chicago, supra.*

Apparently coincidentally with the filing of this suit, the township became concerned about the constitutional problems raised in relation to section

9.05, and by amendment substituted a new provision therefor. The record before us does not disclose its provisions.

Based upon what we have said, we affirm the decree of the chancellor below without prejudice to defendants' rights to apply for a permit under section 9.05, as amended, in the event the amended section provides for exceptions to section 9.01.

Affirmed as indicated above.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.