ADAMS OUTDOOR ADVERTISING v EAST LANSING

LITTLE CAESAR ENTERPRISES, INC v EAST LANSING

BARYAMES CLEANERS, INC v EAST LANSING

Docket Nos. 89026-89028. Argued October 10, 1991 (Calendar No. 15).
Decided March 27, 1992.

Adams Outdoor Advertising, Little Caesar Enterprises, Inc., and
Baryames Cleaners, Inc., brought actions in the Ingham Circuit
Court against the City of East Lansing, alleging that the
amortization provision of the city's sign code that requires
removal of nonconforming signs within a specified amount of
time was enacted without statutory authority. The court,
Thomas L. Brown, J., granted partial summary disposition for
the plaintiffs, finding that the city did not have the statutory
authority to eliminate existing signs without compensating the
sign owners. The Court of Appeals, HOOD, P.J., and MAHER and
CYNAR, JJ., affirmed in an unpublished opinion per curiam
(Docket Nos. 110816-110818). The city appeals.

In an opinion by Justice RILEY, joined by Chief Justice
CAVANAGH, and Justices BRICKLEY, BOYLE, and MALLETT, the
Supreme Court held:

MCL 117.4i(5); MSA 5.2082(5) provides home rule cities statu-
tory authority to forcibly terminate nonconforming billboards
and signs over a reasonable period of time.

1. The zoning authority under the home rule act clearly is
subject to many restrictions enumerated in the zoning enabling
act; the separate power to regulate billboards is not so re-
stricted. While the power to amortize nonconforming signs is
not expressly delegated in the home rule act, it can be inferred
from the broad language of MCL 117.4i(5); MSA 5.2082(5)
without limitation by the statutory protection of nonconform-
ing uses under the zoning enabling act and by *De Mull v City
of Lowell,* 368 Mich 242 (1962).

2. A broad interpretation of the city's power to regulate signs
under the home rule act leads to the conclusion that the
defendant did not lack statutory authority to enact its sign
ordinance, including the provision eliminating nonconforming
signs over time.

Reversed and remanded.

Justice LEVIN, writing separately, stated that a home rule city is authorized to require, without payment of compensation, compliance with reasonable sign and billboard regulations, but if enforcement of the regulations would effect a taking, the constitution requires that just compensation be paid. In this case, it appears that the on-premises sign regulations in general are reasonable and do not result in a taking, but that enforcement of the off-premises sign regulations, as applied to certain billboards and roof signs, well may result in a taking.

The police power belongs to subordinate governmental divisions when and as conferred by the state either through its constitution or constitutionally authorized legislation. Legislation concerning the treatment of nonconforming uses grants municipalities and other local governmental units authority to provide for continued use of land and improvements as lawfully used before enactment of a zoning limitation, but not to destroy them by time limitation or otherwise. If a local governmental unit wishes to remove a nonconforming use, it may acquire the private property by purchase or condemnation.

The off-premises sign regulations at issue, governing location and imposing other requirements, function as zoning. The sign code has substantial effect on vested property rights of owners and lessees of pre-sign code nonconforming uses and clearly constitutes a substantial interference with property rights. The erection and maintenance of off-premises signs generally constitutes the primary use of land devoted to that use. Billboard operators generally own or rent land for no purpose other than to erect and maintain billboards; such use is not incidental to the ownership or rental of land. Regulations restricting and, in the case of roof signs, ultimately eliminating such use, are not divorced from the use of land so as to escape constitutional limitations on zoning enactments. While a community is surely empowered to exercise police power in furtherance of public health, safety, and general welfare, the notion that the right or need of the community to exercise its police power may somehow outweigh property interests runs counter to the constitutional limitation requiring payment of just compensation for a taking.

The city might justify regulating or revising the technical specifications for on-premises signs and billboards to improve traffic safety, in an effort to make the community more aesthetically pleasing, or for other similar public purposes, without incurring the obligation to compensate the owners. Reducing the proliferation of flashing lights and neon displays may further such purposes without impinging upon property rights. As long as signs may still be displayed to inform potential

customers of a particular business location, the relatively mod-
est cost of rebuilding or relocating a sign may not be constitu-
tionally objectionable. Such a sign essentially is an incidental
use of the property, and the primary function of the property,
as a place where business is conducted, is virtually unaffected.
Such regulation may not, therefore, amount to a taking.

The same apology cannot be made for an amortization provi-
sion as applied to off-premises signs. Retroactive application of
significant changes in standards for such signs, particularly
regulations that would abolish an off-premises sign altogether,
appear to constitute a taking of property without compensation
because, in such cases, the sign itself is the use of property.
From the standpoint of the owner of the affected property,
maintenance of the sign itself is the business being conducted
on the property. The abolition of roof signs under the city's sign
code thus appears to constitute a taking of private property.

Justice GRIFFIN, dissenting, stated that authority for a city to
promulgate an amortization provision cannot be found in MCL
117.4i(5); MSA 5.2082(5), nor inferred in light of *De Mull v City
of Lowell,* 368 Mich 242 (1962).

*Fraser, Trebilcock, Davis & Foster, P.C.* (by
*Michael H. Perry*), for the plaintiffs.

*McGinty, Brown, Jakubiak, Frankland, Hitch &
Henderson, P.C.* (by *Thomas M. Hitch* and
*Dennis E. McGinty*), for the defendant.

Amicus Curiae:

*Bodman, Longley & Dahling* (by *James J. Walsh*)
for Outdoor Advertising Association of Michigan.

*Sullivan, Ward, Bone, Tyler & Asher, P.C.* (by
*Michelle A. Thomas*), for Michigan Municipal
League.

RILEY, J. In the instant case, we granted leave to
appeal to consider the single issue whether the
City of East Lansing has the statutory authority to
enact and enforce its sign ordinance that elimi-
nates nonconforming billboards and signs over a

reasonable period of time.[1] The trial court granted plaintiffs' motion for partial summary disposition, reasoning that the city did not have the statutory authority to eliminate existing signs without compensating sign owners. The Court of Appeals affirmed.[2]

On appeal, the city argues that MCL 117.4i(5); MSA 5.2082(5) gives it the statutory authority to forcibly terminate nonconforming billboards and signs over a reasonable period of time. We agree and reverse.

I

Before the adoption of the current sign code on October 7, 1975, the City of East Lansing regulated signs with respect to size, height, setback, and spacing in a number of the zoning districts pursuant to certain provisions of the zoning code. In most areas of the city, other than residential districts, signs were essentially unregulated except for minimal structural standards so that they would not fall down or blow over.

In the late 1960s, the city undertook a study of sign regulations and traffic ordinances after recognizing that the inordinate number of signs and billboards on the main thoroughfares were contributing to a number of traffic accidents, and were also aesthetically unattractive. In 1973, the city retained the services of Donald E. Cleveland, P.E., who prepared a report for the City of East Lansing Planning Commission recommending detailed standards with respect to height, size, placement,

---

[1] 437 Mich 925 (1991).

[2] *Adams Outdoor Advertising v East Lansing,* unpublished opinion per curiam of the Court of Appeals, decided April 20, 1990 (Docket Nos. 110816-110818).

sign clearance, and setback of signs.[3] Dr. Cleveland suggested these improvements to avoid confusing or misleading traffic, to eliminate vision obstructions necessary for traffic safety, and to otherwise improve the public safety along the city's major streets.

The city council eventually accepted the recommendation of the planning commission to adopt Dr. Cleveland's report and, as a first step, enacted ordinance no. 330. This ordinance prohibited the placement of new signs until the city completed the adoption of a comprehensive sign code. Two years later, the current sign code was adopted. In most situations, the new sign code did not require the elimination of existing billboards and signs within the city. The code did, however, require many sign owners to replace their existing signs and billboards that did not meet the height, size, placement, and location requirements of the new sign code within eight years.[4]

Each of the plaintiffs, and their individual signs, presents a different factual scenario. Adams Outdoor Advertising has three groups of signs located in East Lansing which did not conform with the sign code as of May 1, 1987.[5] These are off-premises signs, which means that they directed attention to a use, business, commodity, service, or activity not conducted, sold, or offered upon the

[3] Dr. Cleveland based his recommendations on the prevailing sign industry standards and the most recent scientific information concerning vision and reaction time in driving. Cleveland, *Traffic Safety Considerations in Roadside Displays,* report prepared for the Planning Commission, City of East Lansing, Michigan (May, 1973).

[4] In 1983, this deadline was extended to May 1, 1984, and was later extended to May 1, 1987.

[5] Adams Outdoor Advertising has three roof signs located at 111 North Harrison, two roof signs located at 1108 East Grand River, and seven billboards located at 1502 West Grand River. Under East Lansing's sign code, the roof signs are expressly prohibited, art V, § 8.38(12), and the billboards violate art IV, § 8.36, by exceeding the permissible display area.

premises where the signs were located.[6] Little
Caesar Enterprises, Inc., owns a freestanding sign
located near the front of its building, Baryames
Cleaners has two freestanding signs identifying its
business, and Denny's Schwinn owns a freestand-
ing sign and has two wall signs on its building.
None of these signs meet the height, size, place-
ment, or location requirements of East Lansing's
sign code.

On or about February 27, 1987, the city notified
the plaintiffs that they had to comply with the
size, height, placement, and location requirements
of the sign code or remove their nonconforming
signs by May 1, 1987. Each of the plaintiffs ap-
plied for and were denied variances from the City
of East Lansing Building Board of Appeals. The
plaintiffs then sued defendant, seeking relief from
the denial of their request for a variance. After
defendant answered the complaints, plaintiffs
moved for partial summary disposition on the
theory that the city failed to state a valid defense.[7]
Plaintiffs specifically argued that the amortization
provision of the sign code, § 8.39(8), was enacted
without statutory authority.[8] The City of East
Lansing predicated its statutory authority on MCL
117.4i(5); MSA 5.2082(5),[9] which empowers home

[6] Crawford, *Local zoning control of billboards—A guide for Michigan attorneys,* 1989 Det C L R 1473.

[7] MCR 2.116(C)(9).

[8] The plaintiffs also alleged that enforcement of the sign code was
unconstitutional, as applied to each sign, and a taking in violation of
US Const, Am V; Const 1963, art 10, § 2. Because the trial court only
considered the issue of statutory authority in granting plaintiffs'
motion for partial summary disposition, we will not consider these
issues at this time. On remand, the trial court must evaluate these
allegations only in light of the arguments raised by the parties.

[9] MCL 117.4i(5); MSA 5.2082(5):

For licensing, regulating, restricting and limiting the number
and locations of billboards within the city.

rule cities with the authority to regulate bill-boards.

After evaluating both arguments, the trial court granted plaintiffs' motion for partial summary disposition. The Court of Appeals affirmed, finding that

> the *De Mull* [*v City of Lowell,* 368 Mich 242; 118 NW2d 232 (1962)] holding [is] dispositive of the instant case. Defendant's ordinance, § 8.39(8), called for the elimination of all nonconforming signs. Such action has not been authorized by the Legislature. *De Mull, supra,* pp 250-252. In addition, defendant did not purchase and condemn the signs thereby abating the use.
>
> Defendant has failed to distinguish *De Mull* or persuade us that this decision is inapplicable. Therefore, in reviewing the pleadings, we find that the portion of defendant's answer based upon § 8.39(8) is so clearly untenable as a matter of law, that no factual development could deny plaintiffs right to recovery against this defense. *City of Hazel Park* [*v Potter,* 169 Mich App 714, 718; 426 NW2d 789 (1988)]. The trial court properly granted plaintiffs partial summary disposition and dismissed that part of defendant's answer at issue.[10]

II

We agree with the Court of Appeals that the resolution of this issue requires analysis of this Court's decision in *De Mull, supra.* However, we do not agree with the Court of Appeals determination that *De Mull* requires the decision it reached. Rather, we conclude that *De Mull* is distinguishable because this Court held that in amending the *zoning enabling act*[11] to provide statutory protec-

---

[10] *Adams Outdoor Advertising,* n 2 *supra,* slip op, p 4.

[11] 1921 PA 207, MCL 125.581 *et seq.*; MSA 5.2931 *et seq.*

tion for nonconforming uses and structures, the Legislature did not intend to allow the elimination of such nonconforming uses or structures by an ordinance prescribing a time limitation.[12] We based our holding on an interpretation of the legislative history of 1947 PA 272, MCL 125.583a; MSA 5.2933(1). That section provides in pertinent part:

> The lawful use of land or a structure *exactly* as the land or structure existed at the time of the enactment of the ordinance affecting that land or structure, may be continued, except as otherwise provided in this act, although that use or structure does not conform with the ordinance. [Emphasis added.]

The *De Mull* Court found significant the fact that the original Senate bill would have allowed for the removal of nonconforming uses and structures over a reasonable period of time. *Id.* at 252. However, the Senate chose not to authorize amortization as an exception to the statutory protection of nonconforming uses and structures in the zoning enabling act after receiving an opinion from the Attorney General's office questioning the constitutionality of the amortization provision. *Id.* at 251-252. Thus, the *De Mull* Court held that there is no implied power under MCL 125.583a; MSA 5.2933(1) to eliminate over time nonconforming uses and structures.

The question that must be answered, then, is whether the Legislature, in enacting the *home rule act,* also intended to prevent the enactment of an ordinance that requires nonconforming signs to be made to conform or removed within a specified period of time. We conclude that the Legislature

---

[12] Such elimination of nonconforming uses and structures over a specified period of time is commonly referred to as "amortization." See 82 Am Jur 2d, Zoning and Planning, § 188, p 702.

did not intend to limit the scope of the defendant's power to regulate billboards under the home rule act[13] to the same extent that a city's power to zone with respect to nonconforming uses and structures is restricted.

The plaintiffs argue, however, that this Court's holding in *De Mull,* that the Legislature did not authorize the amortization of nonconforming uses and structures under the zoning enabling act, controls the scope of a city's power to regulate signs, regardless of whether the regulation is pursuant to the zoning power or another arm of the police power. It is true that in *De Mull* we declined to infer a legislative authorization to amortize nonconforming uses and structures. However, our conclusion in *De Mull* was based on the legislative history of a provision of the zoning enabling act, and therefore cannot be used to restrict the scope of the defendant's power granted under a provision of a separate act, the home rule act. In *De Mull,* the statutory protection of nonconforming uses and structures, combined with the legislative history of that provision in the zoning enabling act, caused us to hold that there is no implied power to amortize in the zoning context. However, neither the home rule act, nor any other statute prescribing the power to regulate billboards, includes a similar protection for nonconforming signs, nor is there legislative history indicating that the Legislature chose not to grant the authority to amortize nonconforming signs. Therefore, *De Mull* did not establish a precedent, for all cases where a city's exercise of its police power has an effect on property, that amortization is only authorized where expressly stated by the Legislature. Our finding of no legislative authorization to

---

[13] 1909 PA 279, MCL 117.1 *et seq.*; MSA 5.2071 *et seq.*

amortize in *De Mull* should not be read to extend beyond the zoning context.

This reading of *De Mull,* as not restricting a city's authority to regulate billboards under the home rule act, is also consistent with this Court's longstanding liberal interpretation of that act. We noted in *Gallup v Saginaw,* 170 Mich 195, 200; 135 NW 1060 (1912), that the home rule act is

> one of general grant of rights and powers, subject only to certain enumerated restrictions, instead of the former method of only granting enumerated rights and powers definitely specified. We must assume the act was passed with that intent and construe it accordingly.[14]

The zoning authority under the home rule act is clearly subject to many restrictions, enumerated by the Legislature in the zoning enabling act. The separate power to regulate billboards is not so restricted. Further, in construing the same section of the home rule act at issue here, MCL 117.4i; MSA 5.2082, we have said that the act is comprehensive, " 'but it leaves many things to be implied from the power conferred.' " *People v Sell,* 310 Mich 305, 312; 17 NW2d 193 (1945) (citation omitted). " 'Considering its purpose, [the act] should be construed liberally and in a home-rule spirit.' " *Id.* at 312-313.

Therefore, while the power to amortize nonconforming signs is not expressly delegated in the

---

[14] Const 1963, art 7, § 34 compels the same conclusion. It states that "provisions of [the] law concerning counties, townships, cities and villages shall be *liberally* construed in their favor." (Emphasis added.) Our construction of MCL 117.4i(5); MSA 5.2082(5) comports with this requirement. We are simply holding that the amortization provision of the East Lansing sign code is a police power ordinance, properly enacted under MCL 117.4i(5); MSA 5.2082(5), that enables cities the authority to regulate signs and billboards in the interest of the health, safety, and welfare of the community and to promote the aesthetic value of the city.

home rule act, it can be inferred from the broad language of MCL 117.4i(5); MSA 5.2082(5), without limitation by the statutory protection of nonconforming uses under the zoning enabling act and this Court's decision in *De Mull.* Contrary to the plaintiffs' argument, a broad interpretation of the defendant's power to regulate signs in the home rule act leads to the conclusion that the defendant did not lack the statutory authority to enact its sign ordinance, including the provision eliminating nonconforming signs over time.

CONCLUSION

In the instant case, the trial court granted plaintiffs' partial motion for summary disposition after finding that the amortization provision of the East Lansing sign code was enacted without legislative authority. At that point, plaintiffs did not raise the remaining issues whether the ordinance eliminating nonconforming signs over time is unconstitutional, as applied to each sign, or whether the enforcement of the sign code against nonconforming signs would be an unconstitutional taking.[15] Accordingly, we reverse the decision of the Court of Appeals and remand this case to the trial court to resolve the remaining issues.

Cavanagh, C.J., and Brickley, Boyle, and Mallett, JJ., concurred with Riley, J.

Levin, J. (*separate opinion*). The majority holds that the Legislature has empowered the City of

[15] While we do not dispute much of the dissent's analysis, I cannot agree with the inclusion of the taking argument in this case. Although it has been alleged by the plaintiffs in their pleadings, it was not considered by the trial court in granting plaintiffs' motion for partial summary disposition. Therefore, we believe that the dissent's discussion can only be viewed as dicta, interesting dicta, but irrelevant to the outcome of this case.

East Lansing to require that signs and billboards put in place before enactment of the challenged sign code either be removed or modified within a reasonable period of time to conform to the size, height, setback, and placement standards of the sign code, but that, in particular circumstances, a sign owner may have a claim for just compensation. The cases have been remanded for further proceedings.

I agree with that disposition. A home rule city is authorized to require, without payment of compensation, compliance with reasonable sign and billboard regulations. But if enforcement of the regulations would effect a taking, the constitution requires that just compensation be paid.[1]

It makes little difference to the plaintiffs or the City of East Lansing whether the city must pay just compensation to the owners of signs and billboards put in place before the sign code was enacted because the provision of the home rule act relied on by the city[2] does not specifically authorize termination of nonconforming uses by ordinance of time limitation, or whether the city must instead pay because the amortization provision of the sign code effects a taking and is unconstitutional either on its face or as applied to particular plaintiffs.

This action would not have been commenced if the City of East Lansing were willing to pay compensation. The fundamental issue, then, is whether, when there is a taking, the city can

[1] Absent a taking, there would be less need to be concerned with whether there is legislative authority for a city to promulgate an amortization provision, or whether such a provision is violative of the constitutional requirement that just compensation be paid where there is a taking.

[2] The home rule act was amended to authorize a city charter to provide "[f]or licensing, regulating, restricting and limiting the number and locations of billboards within the city." MCL 117.4i(5); MSA 5.2082(5).

enforce the sign code without paying just compensation by providing a reasonable time for compliance with the new regulations.

Although this case has not been tried, and a factual record has not been developed, it appears that the *on*-premises sign regulations are, in general, reasonable and do not result in a taking, but that enforcement of the *off*-premises sign regulations, as applied to billboards and roof signs owned by Adams Outdoor Advertising, may well result in a taking.

Off-premises signs generally constitute the primary, and often the entire, use of the property on which they are located. In contrast, on-premises signs are incidental to the conduct of a business.[3]

The ordinance calls for the *elimination* of roof signs, and thus "takes" those signs from Adams Outdoor, at least with a lower-case t, and possibly a capital, constitutional T.

Adams Outdoor and amicus curiae Outdoor Advertising Association of Michigan contend that the size restrictions on billboards substantially affect their commercial value and therefore effect a taking. The facts and the law with regard to the claim of a partial taking can be developed on the remand that the majority has ordered.

I

On October 7, 1975, the City of East Lansing adopted a sign code establishing size, height, placement, and setback standards for all signs and billboards in the city, and prohibiting construction, erection, or maintenance of certain types of signs.

---

[3] Plaintiffs Denny's Schwinn, Baryames Cleaners, Inc., and Little Caesar Enterprises, Inc., would indeed incur some expense in complying with the new on-premises regulations and, at the same time, modernizing their signs.

The code requires that all signs and billboards, including those extant before adoption of the code, conform to the newly promulgated standards and prohibitions no later than October, 1983; this delay in the mandatory effective date is characterized as an amortization provision.[4] The deadline was twice extended, first to May 1, 1984, and later to May 1, 1987. The sign code, as amended, thus required removal of signs and billboards not in compliance by May 1, 1987.

Plaintiffs, owners of preëxisting nonconforming signs and billboards, applied for variances, which were denied. Plaintiffs then sought relief by filing these actions, consolidated at the circuit court and appellate levels, claiming that the city was without authority to ordain amortization of preëxisting nonconforming uses, and that amortization constituted a denial of due process and the taking of property without just compensation.[5] The city responded that the amortization provision was a reasonable exercise of the power to regulate signs and billboards delegated by the Legislature to home rule cities, and that elimination by amortization does not constitute a taking.

Plaintiffs moved for partial summary disposition, asserting failure to state a valid defense.[6] The circuit court granted the motion on the ground

[4] The new code provides: "Any existing sign on the effective date of this Chapter or any amendment hereto, which does not at that time comply with all of the provisions hereof, including any amendment: . . . (8) Shall not be placed, maintained or displayed by any person on or after May 1, 1987." Article VI, § 8.39.

[5] Const 1963, art 1, § 17, and art 10, § 2, and the United States Constitution, Fifth and Fourteenth Amendments.

[6] MCR 2.116(C)(9).

The city has also asserted at each stage of court proceedings that, because the amortization provision of its sign code was not invalid as a matter of law, summary disposition was improper. The city contended that the reasonableness of the sign·code should be assessed with respect to each plaintiff at trial.

that the city was without statutory authority to enact the amortization provision. The Court of Appeals affirmed in an unpublished opinion.[7]

A

Before adoption of the new sign code, the City of East Lansing regulated sign size, height, setback, and spacing in the zoning code. Outside residential districts, signs were subject to minimal regulation, addressed primarily to structural standards.

In the late 1960s, the city began a comprehensive study of sign regulations and traffic ordinances. This study was apparently prompted by considerations both of traffic safety and aesthetics. In May, 1973, the city planning commission received a report, prepared by a consultant, recom-

---

[7] Plaintiffs' complaints address the constitutional issues, but Adams Outdoor's motion for summary disposition addressed only the issue of statutory authority. Nonetheless, the city's pleadings, including its brief in opposition to the motion for summary disposition, argue that the amortization provision does not effect a taking, and cite cases decided in other states where the courts found amortization not to be facially unconstitutional.

The trial court *order* does not advert to the taking issue. The order recites "Plaintiffs' claim that the Defendant's Sign Code, Section 8.39(8) was invalid because Michigan law prohibits a Michigan municipality from eliminating by time a lawful, nonconforming use of property[.]"

The order also incorporates by reference the "findings" made following the hearing. Plaintiffs' counsel specifically noted at the hearing that he was arguing the case only on a statutory basis. In his oral ruling, the trial judge relied primarily on *De Mull v City of Lowell,* 368 Mich 242, 252; 118 NW2d 232 (1962), but also said:

That decision in *Central Advertising* never points out that if you have an alternative to amortization, you have no problem. In other words, if the ordinance permits [sic] the signs, and the option of compensation or amortization exists, then it's fine. But if you only give them amortization, then you have problems. I grant the motion.

Similarly, the Court of Appeals did not expressly reach the taking issue but, following *De Mull,* observed that "defendant did not purchase and condemn the signs thereby abating the use."

mending standards for sign height, size, placement, setback and clearance.[8]

When the new code was adopted in 1975, sign regulations located in the zoning code were repealed. The new sign regulations were promulgated as a chapter of the building code.[9]

**B**

Plaintiff Adams Outdoor owns three groups of signs located in East Lansing that do not conform with the sign code. Each nonconforming sign owned by Adams Outdoor is defined by the code as an "off-premises" sign, "which directs attention to a use, business, commodity, service or activity not conducted, sold or offered upon the premises where the sign is located."[10] Five of the Adams Outdoor signs are roof signs, which are prohibited anywhere in East Lansing.[11] Adams Outdoor also maintains seven billboards on West Grand River; these billboards violate provisions of the code limiting total display area[12] and establishing standards for height,[13] setback,[14] and spacing.[15]

Plaintiff Little Caesar Enterprises, Inc., owns a

[8] The city council began implementing the recommendations by enacting, in August, 1973, a moratorium that barred further placement of signs pending adoption of a new sign code. The moratorium remained in effect until the new code was enacted.

[9] The sign ordinance was enacted as Chapter 99 of Title VII, Building Regulations of the Code of the City of East Lansing.

[10] Section 8.21(16).

[11] Section 8.21(24), as amended, defines "[r]oof sign" as "any sign which is attached to a building and any part of which extends more than one (1) foot above either the top line of the building silhouette or any portion of the roof surface." Section 8.38(12) prohibits construction, erection, or maintenance of any roof sign.

Three of the Adams Outdoor roof signs are located on North Harrison, and two are located on East Grand River.

[12] Section 8.36(2).

[13] Id.

[14] Id., § 8.36(4).

[15] Id., § 8.36(5).

freestanding sign[16] located at its place of business, on East Grand River. Plaintiff Baryames Cleaners, Inc., has two freestanding signs at its West Grand River location. Plaintiff Denny's Schwinn has a freestanding sign located at its place of business on East Grand River, and also has two wall signs attached to the building. All these signs violate one or more of the new standards, but were constructed in apparent compliance with ordinances then in effect.

II

This Court has said that the police power "belongs to subordinate governmental divisions when and as conferred by the State either through its Constitution or constitutionally authorized legislation."[17]

The Court of Appeals said that the East Lansing amortization provision "called for the elimination of all nonconforming signs. Such action has not been authorized by the Legislature." The Court cited *De Mull v City of Lowell,* 368 Mich 242, 252; 118 NW2d 232 (1962), where this Court said that the Legislature had "withheld permission to destroy [nonconforming uses] by time limitation or otherwise."

The plaintiff in *De Mull* challenged the provision of a city zoning ordinance that required termination of the use of his property as a junkyard within a three-year period. The Court, in striking

---

[16] A freestanding sign is "a sign the principal support of which is independent of any building." Section 8.21(10).

[17] *Clements v McCabe,* 210 Mich 207, 215; 177 NW 722 (1920). See also *City of Livonia v DSS,* 423 Mich 466, 492-494; 378 NW2d 402 (1985) (discussing continued vitality of *Clements*); *Detroit Osteopathic Hosp v Southfield,* 377 Mich 128, 132; 139 NW2d 728 (1966); *Krajenke Buick Sales v Hamtramck City Engineer,* 322 Mich 250, 254; 33 NW2d 781 (1948); *Kalamazoo v Titus,* 208 Mich 252, 265; 175 NW 480 (1919).

down "this ordained 3-year death sentence for nonconforming uses,"[18] said that the power delegated to the city in the zoning enabling act did not include authority to enact an amortization provision:

Whatever the law may be in other States, law stemming as it does from specific and variant statutory zoning enactments and judicial construction thereof, the fact remains that the cities of Michigan *have not as yet been authorized, by requisite legislative act, to terminate nonconforming uses by ordinance of time limitation.*[19] [Emphasis added.]

The Court said that, in amending the zoning enabling act in 1947[20] to provide for the treatment of nonconforming uses, the Legislature had specifically considered and rejected a grant of authority "for elimination of a nonconforming use by an ordinance of time limitation."[21] The Court said that the Legislature, out of concern about the constitutionality of a provision authorizing amorti-

[18] *Id.,* p 250.

[19] *Id.*

[20] 1947 PA 272, MCL 125.583a; MSA 5.2933(1).

The zoning enabling act, 1921 PA 207, and the provision of the home rule act "authoriz[ing] cities to include the power to zone in their charters," 1921 PA 348, were signed within one day of each other. See *Korash v Livonia,* 388 Mich 737, 741-742; 202 NW2d 803 (1972). Both were enacted in response to this Court's decision in *Clements,* n 17 *supra,* p 216, that the City of Detroit did not have the power to zone.

[21] *De Mull, supra,* p 251.

The draft enactment had provided in part:

" 'The legislative body in cities and villages may provide for the removal of such nonconforming uses or structures by specifying a reasonable period or periods in which such removal shall be required. In determining such periods consideration shall be given to the type of use and the type, age and other characteristics of the structures.' " [*Id.,* p 252.]

zation, had solicited the advice of the Attorney General and, in response to his opinion, had "carefully refrain[ed] from enactment of any such authorization . . . ."[22]

A

The City of East Lansing seeks to distinguish *De Mull* on the basis that this Court there addressed a delegation of police power by the city or village zoning enabling act,[23] while the amortization provision in the East Lansing sign code was enacted pursuant to a delegation of the police power by an amendment of the home rule act granting authority to regulate signs and billboards.[24]

The city offers various arguments in support of its contention that regulation of signs and billboards by a home rule city, including amortization of preëxisting signs and billboards, is not subject to *De Mull.* I am of the opinion that the principle set forth in *De Mull,* respecting the delegation of authority to enact provisions calling for amortization, governs disposition of this case without regard to how the new sign code might be character-

[22] *Id.,* p 251.

The Attorney General opined that the proposed provision authorizing amortization, which would have required a municipality to " 'specify[ ] a reasonable period based on type of use and the type, age and other characteristics of structures, would be held invalid, since it contemplates ordinances which would set definite periods of time.' " *Id.,* p 252, quoting OAG, 1947-1948, No 146, p 218 (March 7, 1947).

The Court said:

The legislature heeded the foregoing opinion and meaningfully eliminated, from then drafted section 3a, authorization to do that which the defendant city has attempted to ordain. Thus it must be held that [the amortization provision] of the city's zoning ordinance is invalid for want of legislative warrant. [*De Mull, supra,* p 252.]

[23] MCL 125.581 *et seq.*; MSA 5.2931 *et seq.*
[24] MCL 117.4i(5); MSA 5.2082(5).

ized. As the 1947 opinion of the Attorney General recognized, a substantial deprivation of private property rights necessarily implicates the takings question. Authority to ordain such a deprivation of property rights must be expressly granted, and is not "implicit" in the billboard language of the amendment of the home rule act.

In adopting the nonconforming use provisions of the city and village zoning enabling act discussed in *De Mull,* and similar provisions concerning nonconforming uses in other delegations of the zoning power,[25] the Legislature recognized in each instance the need for specific delegation of authority respecting nonconforming uses. As set forth in *De Mull,* the Legislature considered and rejected a further, more expansive grant of authority to terminate nonconforming uses by ordinance of time limitation, and indicated that a specific delegation of authority would be required before a local governmental unit could enact an ordinance amortizing nonconforming uses. Such a specific delegation has not been enacted respecting signs and billboards.

With minor linguistic differences, enactments of the Legislature concerning the treatment of nonconforming uses grant municipalities and other local governmental units authority to provide for continued use of land and improvements as lawfully used before enactment of a zoning limitation.[26]

Each enactment grants local governmental units the authority to enact ordinances providing for completion, resumption, restoration, reconstruc-

[25] MCL 125.216; MSA 5.2961(16) (county zoning), MCL 125.286; MSA 5.2963(16) (township zoning), MCL 125.583a; MSA 5.2933(1) (city or village zoning).

[26] MCL 125.216(1); MSA 5.2961(16)(1) (county zoning), MCL 125.286(1); MSA 5.2963(16)(1) (township zoning), MCL 125.583a(1); MSA 5.2933(1)(1) (city or village zoning).

tion, extension, or substitution of nonconforming uses.[27] In each enactment, the Legislature has "withheld permission to destroy them, by time limitation or otherwise."[28]

Each enactment grants local governmental units the power to acquire private property by purchase or condemnation "for the removal of nonconforming uses."[29] I would read this as underscoring that if a community wishes to "remove" nonconforming uses, the means of doing so is by "purchase or condemnation."

B

The provision of the home rule act authorizing regulation of signs and billboards was added by 1939 PA 175.[30] This provision codified or, minimally, recognized this Court's decision in *Wolverine Sign Works v Bloomfield Hills,* 279 Mich 205; 271 NW 823 (1937).

The sign owner in *Wolverine Sign Works* leased private land and, before February, 1927, had erected billboards. After April, 1927, the city enacted sign ordinances and zoning restrictions. The plaintiff was denied a permit to maintain the billboards. In October, 1933, members of the plaintiff's painting crew were arrested while working on the billboards. The Court said that the city's treatment of nonconforming signs "destroys the lease use, a property right, and incidentally

---

[27] MCL 125.216(2); MSA 5.2961(16)(2), MCL 125.286(2); MSA 5.2963(16)(2), MCL 125.583a(2); MSA 5.2933(1)(2).

[28] *De Mull, supra* p 252.

To the extent that East Lansing is subject to both the home rule act and the zoning enabling act, and insofar as the two enactments embody overlapping grants of authority pursuant to the police power, the specific provisions of the zoning enabling act governing nonconforming uses are controlling.

[29] MCL 125.216(3); MSA 5.2961(16)(3), MCL 125.286(3); MSA 5.2963(16)(3), MCL 125.583a(3); MSA 5.2933(1)(3).

[30] MCL 117.4i(5); MSA 5.2082(5).

takes from the owner of the land the right of such rental."[31]

The Court held that the authority to regulate billboards pursuant to the police power did not extend to termination of nonconforming signs, and said:

> The city *may establish zones and prohibit the erection of billboards therein* and may, to promote public health, safety and general welfare, within reasonable considerations, regulate the maintenance of billboards *but may not arbitrarily strike down the maintenance of erected billboards* or vest such power of arbitrary action in municipal officers.[32] [Emphasis added.]

Nothing in the amendatory language, enacted two years[33] after *Wolverine Sign Works* was decided, supports a judicial construction that the Legislature intended to grant home rule cities the authority to terminate nonconforming signs and billboards, which in the words of this Court in *Wolverine Sign Works,* would "destroy" property rights. Nor does the amendatory language suggest an extraordinary legislative purpose to tolerate amortization in the context of signs and billboards, for the provision speaks only of "*licensing, regulating, restricting* and *limiting* the number and locations of billboards within the city." (Emphasis added.)

C

The city contends that while a zoning code regulates the use of land in relation to other

---

[31] *Wolverine Sign Works, supra,* p 207.

[32] *Id.,* p 208 (emphasis added).

[33] See n 30 and accompanying text.

land,[34] its sign code applies uniformly throughout the city, and distinguishes signs by types, regulates the location of signs, and establishes technical requirements concerning size and height.

A number of provisions of the new sign code are, however, expressly or implicitly tied to zoning districts. Section 8.36(1) links permission to maintain certain off-premises signs to their location on property zoned M and property zoned B-2. The provisions of §§ 8.33 and 8.34 implicitly link sign regulations, by "types of premises," including commercial, office, and professional center designations, to permitted uses defined in the provisions of the zoning ordinance concerning zones B-1, B-3, and B-4.[35]

This Court in *Krajenke Buick Sales v Hamtramck City Engineer,* 322 Mich 250, 252; 33 NW2d 781 (1948), looked behind the defendant city's claim that the challenged regulation was a building code. The regulation's distinction between

---

[34] The city acknowledges that zoning and sign codes both regulate setback and height requirements, but asserts that the purposes of the requirements are different in the two types of enactments. The effect, termination of nonconforming uses, is, however, the same under either denomination.

[35] 8.36 Signs Permitted—Off-Premises Signs. Off-premises, free standing or wall signs including bill board structures or signs shall be permitted on premises which are not otherwise used or occupied for the uses or purposes described in sections 8.30 through 8.35 of this Chapter subject to the following restrictions:

(1) *Off-premises signs shall be permitted only on premises which are zoned B-2 or M* and which are located on major streets.

* * *

(4) Such signs shall be set back not less than twenty-five (25) feet from the nearest existing or future curb line, or, in the absence of curbs, twenty-five (25) feet from the edge of pavement *or the minimum setback for buildings and structures for the zoning district within which the sign is located,* whichever is greater . . . . [Emphasis added.]

"residential areas" and "business streets"[36] made oblique but significant reference to zoning districts.[37]

The Court found the "building code" to be a zoning ordinance, and invalidated the ordinance for failure of enactment in accord with procedural requirements of the zoning enabling act.

The off-premises sign regulations of the East Lansing sign code governing location and imposing other requirements function as zoning.

D

The sign code has substantial effect on vested property rights of owners and lessees of preëxisting nonconforming uses, even where the sign code does not ordain differential treatment of signs or billboards on the basis of zones within the city, as may be the case with respect to roof signs.[38] A treatise writer observed:

Where the particular restriction constitutes, or would constitute, a *substantial interference with land use,* the municipality ordinarily must treat it as a zoning regulation and must follow statutory or charter zoning procedures, even though other

[36] These were terms of the rudimentary zoning ordinance in place at the time of enactment of the disputed provision.

[37] The ordinance provided:

"In residential areas and excluding business streets, all structures, whether frame, fireproof or otherwise shall conform to the established front building line of existing adjacent. structures on same side of street or avenue, providing that the provisions of the foregoing subsection shall not be deemed to apply to structures already in existence on any corner lot." [322 Mich 252.]

[38] Roof signs are apparently prohibited by the code throughout the city, § 8.38(12), and must "not be placed, maintained or displayed by any person on or after May 1, 1987." Section 8.39(8).

authority for the particular type of ordinance has been granted.[39] [Emphasis added.]

The restrictions imposed by the amortization provision of the sign code respecting off-premises signs clearly constitute a "substantial interference with land use," and hence with property rights.

The erection and maintenance of off-premises signs generally constitutes the primary use of land devoted to that use. Billboard operators such as Adams Outdoor generally own or rent land for no purpose other than to erect and maintain billboards; such use is not "incidental" to the ownership or rental of land. Regulations restricting and, in the case of roof signs, ultimately eliminating such use, are not, as the city argues, divorced from the use of land so as to escape constitutional limitations on zoning enactments.

Regulation of signs and billboards has been analyzed as a form of zoning in earlier decisions of this Court and by courts in other states.[40] The amortization provision of East Lansing's sign code, whether or not "zoning," has an impermissible

---

[39] 1 Rathkopf, Zoning and Planning, § 1.02[3], pp 1-29.

[40] See, e.g., *Dingeman Advertising, Inc v Algoma Twp*, 393 Mich 89; 223 NW2d 689 (1974); *Superior Twp v Reimel Sign Co*, 362 Mich 481; 107 NW2d 808 (1961). See also *Columbia v Omni Outdoor Advertising, Inc*, 499 US —; 111 S Ct 1344, 1350; 113 L Ed 2d 382 (1991), characterizing the regulation of billboard size, spacing, and location as "surely a common form of zoning . . . ."

The same assumption, or equation between zoning and sign regulation, is made by most of the authorities that hold that amortization does not amount to an unconstitutional taking of property without compensation. *New Castle v Rollins Outdoor Advertising, Inc*, 475 A2d 355 (Del, 1984); *Fayetteville v McIlroy Bank & Trust Co*, 278 Ark 500; 647 SW2d 439 (1983); *Ackerly Communications, Inc v Seattle*, 92 Wash 2d 905; 602 P2d 1177 (1979); *Lubbock Poster Co v Lubbock*, 569 SW2d 935 (Tex Civ App, 1978), cert den 444 US 833 (1979); *Art Neon Co v City and Co of Denver*, 488 F2d 118 (CA 10, 1973), cert den 417 US 932 (1974); *Nat'l Advertising Co v Monterey Co*, 1 Cal 3d 875; 464 P2d 33 (1970); *Naegele Outdoor Advertising Co v Minnetonka*, 281 Minn 492; 162 NW2d 206 (1968); *Grant v Baltimore*, 212 Md 301; 129 A2d 363; 172 NW2d 382 (1957).

retroactive effect on nonconforming uses,[41] and is invalid insofar as enforcement would constitute a taking of property without payment of just compensation.[42]

### III

The city argues that a majority of state courts, when faced with a constitutional challenge to amortization ordinances as a taking of property without compensation, have managed to overcome these objections, approving the uncompensated termination of nonconforming uses.

The courts approving amortization as a reasonable imposition on private property rights have based their conclusions upon policy arguments of dubious merit. Further, the authorities to the contrary, while less numerous, are more persuasive.[43]

Authorities holding that amortization is consti-

[41] *Bane v Pontiac Twp,* 343 Mich 481, 492; 72 NW2d 134 (1955) (township ordinance affecting the location of and sanitary facilities in trailer homes; an enactment requiring termination of preëxisting nonconforming uses, and having the effect of a zoning ordinance, could not be applied retroactively against the plaintiffs).

[42] See *Detroit Edison Co v City of Wixom,* 382 Mich 673, 690 (1969).

[43] Addressing this question nearly thirty years ago, at a time when the authorities were more evenly divided than today, the court in *Hoffmann v Kinealy,* 389 SW2d 745, 752 (Mo, 1965), observed that

> although the holdings in other jurisdictions may, in some instances, be enlightening and persuasive, it is neither our duty nor our inclination to rule a question of first impression in this state simply by counting foreign cases and then falling off the judicial fence on the side on which more cases can be found.

See also *PA Northwestern Distributors, Inc v Zoning Hearing Bd of Moon Twp,* 526 Pa 186; 584 A2d 1372 (1991); *Lamar Advertising of South Georgia, Inc v Albany,* 260 Ga 46; 389 SE2d 216 (1990); *Ailes v Decatur Co Area Planning Comm,* 448 NE2d 1057 (Ind, 1983); *Akron v Chapman,* 160 Ohio St 382; 116 NE2d 697 (1953); *United Advertising Corp v Borough of Raritan,* 11 NJ 144; 93 A2d 362 (1952), holding that amortization provisions are violative of constitutional limitations.

tutionally permissible invariably begin by ac-
knowledging the principle that nonconforming
uses are not subject to immediate termination.
Zoning enactments have traditionally been pro-
spective in effect, partly in the expectation, it has
been said, "that existing nonconforming uses
would be of little consequence and . . . would
eventually disappear."[44] But, as a commentator
observed, "the number of nonconforming uses did
not decrease, but rather increased due to indiffer-
ent or unsympathetic administration of the zoning
ordinances, incorrect granting of variances, and
influential political pressures."[45]

The impetus for amortization may be communal
frustration with how long it has taken noncon-
forming uses to "eliminate themselves." The Su-
preme Court of Missouri explained that some com-
munities have addressed the problem of persistent
nonconforming uses by recourse to legislative leg-
erdemain:

> [Z]oning zealots have been casting about for
> other methods or techniques to hasten the elimina-
> tion of nonconforming uses. In so doing, only
> infrequent use has been made of the power of
> eminent domain, primarily because of the expense
> of compensating damaged property owners, but
> increasing emphasis has been placed upon the

[44] *Los Angeles v Gage,* 127 Cal App 2d 442, 454; 274 P2d 34 (1954).

[45] Graham, *Legislative techniques for the amortization of the non-
conforming use: A suggested formula,* 12 Wayne L R 435, 437 (1966).
See also *Lachapelle v Goffstown,* 107 NH 485, 486-487; 225 A2d 624
(1967):

> In the beginning zoning "sought to safeguard the future, in
> the expectation that time will repair the mistakes of the past."
> Experience has demonstrated that this expectation and proph-
> ecy has not been fulfilled and that something more than time
> and hope is required to eliminate or restrict nonconforming
> uses. [Citation omitted.]

"amortization" or "tolerance" technique which conveniently bypasses the troublesome element of compensation.[46]

Courts in states passing favorably on amortization "reason" that, where the private loss to property owners is outweighed by the public benefit of amortizing nonconforming uses, there is no constitutional difficulty if the period of amortization is reasonable. A reasonable amortization period has been said to be one that allows affected property owners adequate time to recover their investment. In this connection, reference is sometimes made to the economic life of the property, such as a "depreciation" period, either in financial accounting or tax accounting terms.[47]

While a community is surely empowered to exercise police power in furtherance of public health, safety, and general welfare, and "[e]very exercise of the police power is apt to affect adversely the property interest of somebody,"[48] the notion that the right or need of the community to exercise its police power may somehow "outweigh" private property interests runs counter to the

---

[46] *Hoffmann v Kinealy,* n 43 *supra,* p 750.

[47] A further factor sometimes taken into account in calculation of a reasonable amortization period is whether the affected property owner, by virtue of the *prospective* ban on the similar use of property by other owners in the community, receives the benefit of a temporary "monopoly" on the nonconforming use. The implicit assumption of this analysis is that the community has a greater right to deprive persons of the use and enjoyment of their property if the community has taken action that indirectly enhances the value of such property.

This argument, like the balance of the analysis applied by the courts finding that amortization does not effect a taking, overlooks the principle that unless a property right is at the outset insubstantial, neither the state nor local governmental units to which the state delegates police power may deprive persons of the use and enjoyment of their property without paying just compensation. The gratuitous, and assertedly fortuitous effects, if any, of "monopoly" do not alter this principle.

[48] *Zahn v Los Angeles Bd of Public Works,* 195 Cal 497, 512; 234 P 388 (1925).

constitutional limitation requiring payment of just compensation for a taking.

The introduction of a temporal component does not alter the analysis. As the court in *Hoffmann v Kinealy,* 389 SW2d 745, 753 (Mo, 1965), said:

> To our knowledge, no one has, as yet, been so brash as to contend that such a pre-existing lawful nonconforming use properly might be terminated *immediately.* In fact, the contrary is implicit in the amortization technique itself which would validate a taking *presently* unconstitutional by the simple expedient of *postponing* such taking for a "reasonable" time. All of this leads us to suggest, as did the three dissenting justices in *Harbison v City of Buffalo* [4 NY2d 553, 566-567; 176 NYS2d 598; 152 NE2d 42 (1958)], that it would be a strange and novel doctrine indeed which would approve a municipality taking private property for public use without compensation *if the property was not too valuable and the taking was not too soon,* and prompts us to repeat the caveat of Mr. Justice Holmes in *Pennsylvania Coal Co v Mahon,* 260 US 393, 416; 43 S Ct 158; 67 L Ed 322; 28 ALR 1321 [1922], that "[w]e are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."

The application of "generally accepted accounting principles" in this context is unpersuasive. No reasonable person would seriously suggest that the owner of the Empire State Building could be required, in the exercise of the police power, to remove the building from the land, or even to rebuild it to current specifications, at the conclusion of a thirty- or fifty-year period mandated pursuant to the Internal Revenue Code as representing the useful life of buildings for tax depreciation purposes, without paying just compensation.

Proponents of amortization, such as the City of East Lansing, gloss over the difference between on- and off-premises signs and billboards. The city acknowledges the general judicial "reluctance" to permit amortization of nonconforming uses in relation to "primary" uses, but asserts that signs and billboards are "secondary" and thus may be eliminated by amortization. I might agree insofar as freestanding on-premises signs and billboards are at issue. As respects off-premises signs and billboards, I cannot agree.

The city might justify regulating or revising the technical specifications for on-premises signs and billboards to improve traffic safety, in an effort to make the community more aesthetically pleasing, or for other similar public purposes, without incurring the obligation to compensate the owners. Reducing the proliferation of flashing lights and neon displays may further such purposes without impinging upon property rights. As long as signs may still be displayed to inform potential customers of a particular business location, the relatively modest cost of rebuilding or relocating a sign may not be constitutionally objectionable. Such a sign is, I agree, essentially an incidental use of the property, and the primary function of the property, as a place where business is conducted, is virtually unaffected. Such regulation may not, therefore, amount to a taking.

The same apology cannot be made for an amortization provision as applied to off-premises signs. Retroactive application of significant changes in standards for such signs, particularly "regulations" that abolish an off-premises sign altogether, appear to constitute a taking of property without compensation, for, in such cases, the sign is itself the use of property. From the standpoint of the owner of the affected property, maintenance of the

sign is itself the "business" being conducted on the property. The abolition of roof signs under East Lansing's sign code thus appears to constitute a taking of private property. The imposition of such a taking in homeopathic doses cannot be sustained, despite the asserted underlying public policy.[49]

Unless signs and billboards become contraband, neither the state nor local governmental units may confiscate them, or deprive their owners of the right to maintain and display them without payment of just compensation. Decisions of this Court[50] and enactments of the Legislature[51] clearly attest that signs and billboards are not contraband.

GRIFFIN, J. (*dissenting*). I share the dissenting view of Justice LEVIN that authority for a city to promulgate an amortization provision cannot be found in the language of § 4i(5) of the home rule act, MCL 117.4i(5); MSA 5.2082(5). Nor can such authority be inferred, particularly in light of *De Mull v City of Howell*, 368 Mich 242; 118 NW2d 232 (1962). Without intimating disagreement concerning part III of Justice LEVIN's opinion, I shall reserve judgment as to questions of constitutionality until they are before this Court for decision.

[49] While the absence of a factual record prevents determination of the question, Adams Outdoor may also sustain an incremental, but substantial financial loss by virtue of the city's ordained 300-square-foot limit for off-premises billboards, § 8.36(2). This limit does not allow maintenance of 14 by 48 foot "painted bulletin" billboards. Both the smaller "poster" billboard, with dimensions of 12 by 25 feet (i.e., 300 square feet), and the larger painted bulletin are standard sizes and thus commercially recognized statewide and nationally. Nonetheless, if the billboards owned by Adams Outdoor are of the larger size, the amortization provision requires Adams Outdoor to absorb not only the cost of tearing down the old billboards and erecting new ones, but also a substantial, perpetual reduction in the stream of income from its property attributable to the difference in rental value between the two sizes.

[50] See *Wolverine Sign Works, supra.*

[51] MCL 252.303; MSA 9.391(103) recognizes that "outdoor advertising is a legitimate commercial use of private property, is an integral part of the marketing function and an established segment of the economy of this state."