CITY OF KALAMAZOO *v.* TITUS.

1. STATUTES — POWERS OF LEGISLATURE — RIGHT OF LOCAL SELF-GOVERNMENT.

By our system of State government the right of local self-government is, and always has been, a part of the system, but under the Constitution the legislative power of the State, and all of it, is reposed in the legislature, save only as reserved by referendum and initiative.

2. MUNICIPAL CORPORATIONS—CREATURES OF LEGISLATURE—DERIVED POWERS.

Municipal corporations created by the legislature have no inherent jurisdiction to make laws or adopt regulations of government; they are governments of enumerated powers, acting by a delegated authority, and can exercise those powers only which are expressly or impliedly conferred, and subject to such regulations or restrictions as are annexed to the grant.

3. SAME—CONSTITUTIONAL LAW—PUBLIC UTILITIES — LEGISLATIVE CONTROL.

Although the Constitution of 1909 provided that cities and villages might acquire, own and operate public utilities, etc., it recognized and affirmed the theory that cities owe their origin and their powers to the legislature, and that the latter has general control over them.

4. SAME—RIGHT TO FIX RATES OF PUBLIC UTILITIES—DELEGATED POWER.

If a city has power to regulate the rates of public utility companies using the streets, alleys or public places of the city in any case, it is a derived, a delegated, power, the source of which is the Constitution and the general law under which it is organized.

5. SAME—LOCAL SELF-GOVERNMENT—RIGHT TO FIX RATES—INTERFERENCE BY LEGISLATURE.

Power to regulate rates of public utility companies is not a power necessary to local self-government, denial of which, or interference with the exercise of which, by the legislature, would be interference with local self-control.

6. SAME—RIGHT TO FIX RATES — DELEGATED POWERS — INFERRED POWERS.

Although the "Home Rule Act" (Act No. 279, Pub. Acts 1909, 1 Comp. Laws 1915, § 3304 *et seq.*) delegated to cities the power to provide for the use, regulation, and control of their streets by public utility companies, the power to fix compulsory rates can not be inferred, where it was not expressly delegated.

7. GAS—RIGHTS OF COMPANY DERIVED FROM STATE.

A gas company derives its right to make and sell gas, not from the city, but from the State.

8. MUNICIPAL CORPORATIONS—GAS RATES— POWER OF CITY TO FIX UNDER HOME RULE CHARTER.

No power having been delegated to cities under the "Home Rule Act" to fix compulsory rates for public utility companies, the city of Kalamazoo had no authority, under its charter, adopted in pursuance of said act, to prescribe compulsory rates for gas, and an ordinance prescribing rates at which gas should be furnished to consumers and providing a penalty for its violation, is therefore void.[1]

Certiorari to Kalamazoo; Weimer (George V.), J. Submitted January 21, 1919. (Calendar No. 28,636.) Decided December 23, 1919.

Mandamus by the city of Kalamazoo to compel Albion B. Titus, justice of the municipal court, to issue a warrant for the violation of an ordinance. From an order denying the writ, plaintiff brings certiorari. Affirmed.

*Marvin J. Schaberg* and *Harry C. Howard,* for appellant.

*Albion B. Titus* and *Alfred J. Mills,* for appellee.

The city attorney of the city of Kalamazoo applied to the justice of the municipal justice's court of that city to entertain a complaint against the Michigan Light Company, a corporation furnishing gas to the

---

[1] On power of municipality apart from contract, to regulate the rates to be charged by public service corporations, see notes in 33 L. R. A. (N. S.) 759; 43 L. R. A. (N. S.) 994.

city and its inhabitants, and to issue a warrant upon said complaint against said Michigan Light Company. The justice refused to entertain the proceeding. Thereupon the city applied to the circuit court for Kalamazoo county to issue the writ of mandamus requiring the justice to entertain the proceeding. An order to show cause was issued, an answer made, a hearing was had upon the petition and answer, and the court refused the writ. A writ of certiorari was sued out of this court to review the action of the circuit court. The complaint which it was proposed to file with the justice is not before us. The ordinance of the city of Kalamazoo which it is claimed has been violated by the Michigan Light Company is known as ordinance No. 1, containing 33 sections, approved June 10, 1918, and is entitled:

"An ordinance to regulate the sale of gas in the city of Kalamazoo; provide for the appointment of gas inspector and prescribing the duties of such officer; providing for the inspection of gas and gas meters; prescribing rules and regulations for the quality, pressure and measurement of gas supplied to consumers, and for the enforcement thereof; prescribing the rate at which gas may be sold in the city; provide for the extension of gas mains and services, and prescribing penalties for the violation thereof."

Section 2 of this ordinance reads:

"From, including and after the 15th day of June, A. D. 1918, any person, persons, firm or corporation furnishing gas in the city of Kalamazoo by means of pipes or mains laid in the streets, alleys, or public grounds of said city shall furnish such gas of the quality, and in accordance with the regulations herein provided in this ordinance to all parties desiring to use the same along the streets, alleys and grounds where such mains or pipes are laid at a price of not to exceed eighty-five (85c) cents per one thousand cubic feet, provided that the person, firm, or corporation so furnishing said gas may charge a minimum

fee of not to exceed twenty-five (25c) cents per month, and provided further that any person, firm, or corporation so furnishing gas may add to the amounts charged for gas delivered by such person, persons, firm, or corporation and consumed by parties desiring to use the same a percentage of not to exceed ten (10) per cent., which may be collected by said person, persons, firm, or corporation so furnishing gas, in all cases where bills rendered for the gas consumed shall not have been paid by the consumers within fifteen (15) days after the expiration of the month for which the bill is rendered. No rent or charge whatever shall be charged by any person, firm, or corporation furnishing gas in the city of Kalamazoo to the consumers for any meter in addition to the prices hereinbefore provided."

The concluding paragraph of section 32 is:

"This ordinance shall not be construed in any way as a franchise, but is merely regulatory, and the city commission reserves the right to alter, amend, or repeal this ordinance at any time, and to make such further rules, orders, and regulations as may from time to time be deemed necessary to the city commission to protect the interest, safety, and welfare of the public, or the rights of property of the city of Kalamazoo."

It is provided (section 31), after enumerating various penalties incurred by specific violations of the ordinance, that—

"In case of any other violation of any of the provisions or sections of this ordinance in which a penalty is not otherwise expressly provided, the sum of one hundred ($100.00) dollars for each and every violation thereof, and each day's violation thereof shall be considered a separate offense."

It is set out in the petition for the writ of mandamus that on the 15th day of August, 1918, the Michigan Light Company charged one Dr. Paul T. Butler, a citizen of Kalamazoo, for gas at the rate of one dollar per thousand feet, contrary to the provi-

sions of the said ordinance. It is also alleged that
the Michigan Light Company has absolutely refused
and neglected to in any manner comply with the ordi-
nance, that it has denied the validity of the same, and
operates its plant and uses the streets of the city
without regard to the provisions of the ordinance and
without obtaining any permission or authority what-
soever from the city.

The ordinance was passed, it is alleged, by virtue
of the authority found in section 156 of the charter
of the city of Kalamazoo, reading:

"The city commission shall have the power and au-
thority to regulate the rates of all public utility com-
panies using the streets, alleys or public places of the
city of Kalamazoo in all cases in which the franchise
rights of such utility companies have expired or at
the expiration of any franchise hereafter."

The charter was adopted by the electors of the city
February 4, 1918, acting in that behalf under the pro-
visions of Act No. 279, Public Acts of 1909, as amend-
ed (1 Comp. Laws 1915, § 3304 *et seq.* The city com-
mission is the legislature of the city.

The Michigan Light Company is a Michigan corpo-
ration which once had a franchise from the city in
which the rates to be charged for gas were agreed
to, which franchise (ordinance 121) expired by limita-
tion July 14, 1916. Since the last-mentioned date, it
has occupied the streets and conducted its business
without permission of the city, serving the inhabitants
as theretofore, selling gas at prices fixed by itself. No
material facts are in dispute.

In his answer to the order to show cause the mu-
nicipal justice denied that the city has authority to
adopt an ordinance "regulating the rate of gas to be
sold in the city," and asserted that he—

"refused to issue process or institute proceedings
against the Michigan Light Company under the pro-

visions of said ordinance because said **ordinance is** invalid, and the municipal justice court has no jurisdiction because the ordinance in question is legislative in character, and under the provisions of a 'home rule charter,' so-called, the city commission of the city of Kalamazoo does not possess the power to enact a legislative ordinance to be enforced by a proceeding penal in its nature and that therefore this defendant in issuing process under said ordinance would be acting without jurisdiction."

The order of the circuit court contains the following:

"It appearing to the court that the ordinance attached to said petition and known as ordinance number 1 of the city of Kalamazoo, said ordinance being an ordinance to regulate the sale of gas in the city of Kalamazoo, etc., is invalid because said ordinance is legislative in character, and neither under the provisions of Act No. 279 of the Public Acts of 1909, as amended and now in force, and commonly known as the home rule bill, nor the Constitution or laws of the State of Michigan, did the city commission of the city of Kalamazoo possess the power to enact said ordinance, and therefore the defendant in issuing process under said ordinance would be without jurisdiction."

The argument advanced by the city, the plaintiff in certiorari (and we use the language of the brief, which, after a reference to sections 20, 21 and 28 of article 8 of the Constitution, continues), is:

"The constitutional provisions must be read together, and considered in the light of the relation which they bear to each other. The Constitution provides clearly for local self-government for each city of the State, and reserves to each city the right of reasonable control over its streets, and provides further that under such general laws as may be passed by the legislature, each city has the right to adopt a charter and pass all laws and ordinances in relation

208—Mich.—17.

to its municipal concern, subject to the Constitution and general laws of this State.

"There is therefore clearly no constitutional limitation upon the right of the city under a home rule charter to adopt the charter provision hereinbefore set forth.

"At this point we respectfully contend that under the constitutional provision hereinbefore mentioned, the authority of the legislature to limit the powers of a city under a charter adopted under this constitutional provision is limited as specifically set forth in said section 20, namely, to a rate of taxation and restriction of their powers of borrowing money and contracting debts.

"In other words, we respectfully contend that it is the clear intent of the Constitution to grant to cities of the State of Michigan local self-government, except to such restrictions as the legislature may by general law place upon their rate of taxation, and their power of borrowing money and contracting debt. We do not believe that it was ever the intent of the framers of the Constitution that a city is limited in its home rule charter to only such powers as it may obtain by legislative grace.

"A reasonable construction of this constitutional provision would be that a municipality has the right to adopt such local legislation as it sees fit under such procedure as may be defined by the legislature, provided such legislation does not conflict with the Constitution or general laws of the State, that the cities were really granted local self-government, that is the power to determine such policies and adopt such ordinances as the city might deem beneficial to its inhabitants, bearing in mind always that such general laws as the legislature adopted would be supreme where there is any conflict between a local ordinance and a State statute."

It is further contended that, if it is determined that the power claimed and expressed in the charter is not conferred in the Constitution itself, it was delegated by the legislature in the act of 1909 (1 Comp. Laws 1915, § 3307) in the words—

"Each city may in its charter provide:   *   *   *

"(*g*) For the use, regulation and control of the surface of its streets, and of the space above and beneath them."

And counsel say:

"A careful examination of this language renders it difficult to imagine how the entire power over the use, regulation, and control of the streets could be granted in broader or more inclusive terms. This section makes it possible for any municipality to provide in its charter for the use, regulation, and control of its streets to the broadest possible extent, and to contend that this language would not include the right to regulate a rate conditional upon the use of the streets by a public utility would seem to be a travesty in the light of this language. This power is not only broad, but indicates that the legislature intended that it should be broad and inclusive of everything. The legislature does not enumerate, nor attempt to define or limit the extent of the power of the city over its streets. It may provide first for the use of its streets and the space above and beneath them. It may provide for the regulation of its streets, and finally for the control of its streets. It is not necessary to put any strained construction upon these words for the legislature never intended that this construction should be strained nor limited. The dictionary can be searched in vain for any broader or more inclusive language, and the vocabulary can conceive of no word which could have been used which would have granted to a municipality broader power than this. It was meant to grant to a city home rule so far as its streets were concerned, and the vesting of the use, regulation, and control is left to the electors in their charter."

Various reasons are asserted by counsel for defendant in certiorari why the charter of Kalamazoo ought to be held to be invalid. The question sought to be settled, and the only one considered, is whether the city had power to enact and enforce an ordinance fixing the prices for which the Michigan Light Company shall sell gas.

STONE, J. (*after stating the facts*). In *City of Kalamazoo* v. *Kalamazoo Circuit Judge*, 200 Mich. 146, it appeared that the city, then existing under a special charter, after the expiration of a franchise of the Michigan Light Company, passed an ordinance, taking effect August 1, 1916, fixing the price to be charged for gas at 75 cents per thousand feet and imposing penalties for disobedience of its provisions. The city sued to recover a penalty because the company persisted in charging more than the prescribed price. Upon an appeal to the circuit court, the city asked for an order permitting it to examine the books of the company, and the company moved to dismiss the case on the ground that the ordinance was invalid. It was dismissed. An order to show cause why the order dismissing the suit should not be set aside was made by this court, and upon the petition for the order and the return we decided, (1) that the fixing of such prices or rates is a governmental, legislative, function, which (2) may be delegated by the legislature to a municipality, but (3) only in express terms or by necessary implication, and that it did not appear that the power had been delegated to the city, expressly or by necessary implication, (4) that the asserted power was not conferred upon the municipality by section 28, article 8, of the Constitution. *City of Detroit* v. *Railway Co.*, 172 Mich. 136, was cited. Thereafter, as has been related, the city of Kalamazoo adopted its present charter and enacted the ordinance in question.

The charter provision, the ordinance, the argument made for the city, indeed, the suit itself, reflect a popular interest in, and, we conceive, a popular misunderstanding about the subject of home rule, so-called, in cities. There is apparent a widely spread notion that lately, in some way, cities have become possessed of greatly enlarged powers, the right to exercise which may come from mere assertion of their existence and

the purpose to exercise them. Whether these powers are really inherent in the community, but their exercise formerly was restrained, or are derived from a new grant of power by the State, or may be properly ascribed to both inherent right and to a new grant, are questions which do not seem to bother very much the advocates of the doctrine that they in any event exist. On the other hand, there is expression of grave doubt whether, in the view of the law, there has been any enlargement or extension of the subjects of municipal legislation and control or of the powers of cities except as those subjects and powers are specifically enumerated and designated in the Constitution itself and in the home rule act.

Political experiment has not yet produced, in this State, the autonomous city,—a little State within the State. We have a system of State government and the right of local self-government is, and always has been, a part of the system. We have, as we have always had, a State Constitution, the fundamental law. By it, now, as formerly, the legislative power of the State, and all of it, is reposed for exercise in a legislature; save only as reserved by referendum and initiative proceedings, which are not here involved.

"One of the settled maxims in constitutional law is, that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the State has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the Constitution itself is changed. * * *

"It has already been seen that the legislature cannot delegate its power to make laws; but fundamental as this maxim is, it is so qualified by the customs of our race, and by other maxims which regard local government, that the right of the legislature, in the entire absence of authorization or prohibition, to create towns and other inferior municipal organizations, and to confer upon them the powers of local govern-

ment, and especially of local taxation and police regulation usual with such corporations, would always pass unchallenged. The legislature in these cases is not regarded as delegating its authority, because the regulation of such local affairs as are commonly left to local boards and officers is not understood to belong properly to the State; and when it interferes, as sometimes it must, to restrain and control the local action, there should be reasons of State policy or dangers of local abuse to warrant the interposition.

"The people of the municipalities, however, do not define for themselves their own rights, privileges, and powers, nor is there any common law which draws a definite line of distinction between the powers which may be exercised by the State, and those which must be left to the local governments. The municipalities must look to the State for such charters of government as the legislature shall see fit to provide; and they cannot prescribe for themselves the details, though they have a right to expect that those charters will be granted with a recognition of the general principles with which we are familiar. The charter, or the general law under which they exercise their powers, is their constitution, in which they must be able to show authority for the acts they assume to perform. They have no inherent jurisdiction to make laws or adopt regulations of government; they are governments of enumerated powers, acting by a delegated authority; so that while the State legislature may exercise such powers of government coming within a proper designation of legislative power as are not expressly or impliedly prohibited, the local authorities can exercise those only which are expressly or impliedly conferred, and subject to such regulations or restrictions as are annexed to the grant." Cooley's Constitutional Limitations (7th Ed.), pp. 163, 264 *et seq.*

The quotations are sufficient to present, in a general way, the theory up to this time judicially admitted of the relation of cities in the State to the State itself. It was said by Chief Justice CAMPBELL in *People* v. *Hurlbut,* 24 Mich. 44, 89:

"Our Constitution cannot be understood or carried out at all, except on the theory of local self-government; and the intention to preserve it is quite apparent."

In the Constitution of 1850, the subject was not left wholly to the application of a general theory of State government, but was referred to in provisions in harmony with that general theory. In article 4, section 38, it was provided that—

"The legislature may confer upon organized townships, incorporated cities and villages, and upon the board of supervisors of the several counties, such power of a local, legislative and administrative character as they may deem proper."

In article 15, section 13, the legislature is enjoined to provide for the incorporation and organization of cities and to restrict the powers of taxation, borrowing money, contracting debts and loaning their credit.

A general law for the incorporation of cities is not, as we know, a new, but is a very old, thing. We have had such a law for many years. But the legislature was much occupied in granting special charters to cities, and in making successive amendments to such charters. The supposed evils attending upon the enactment of special charters brought about a constitutional amendment. As invention and use created necessity for certain local conveniences, usually furnished and managed by private action, communities sought enlargement of their powers so that they might own and control the means by which such conveniences were furnished. They sought to have these enlarged powers defined and put, in a measure, beyond legislative control. The history of the changes is not important. In the Constitution of 1909 appears the result of them. A brief reference to them will be made. The heading of article 8 of the Constitution is "Local Government." It is provided (section 20) that

the legislature shall provide by a general law for the incorporation of cities and in the general law *shall* limit their rates of taxation for municipal purposes and restrict their powers of borrowing money and contracting debts.   Section 21 reads as follows:

"SEC. 21. Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State."

In section 22 permission is given to any city or village to acquire, own, establish and maintain, either within or without its corporate limits, parks, boulevards, cemeteries, hospitals, almshouses and all works which involve the public health and safety.   In section 23 it is provided that, subject to the provisions of the Constitution, any city or village may acquire, own and operate, either within or without its corporate limits, public utilities for supplying water, light, heat, power and transportation to the municipality and the inhabitants thereof and may sell and deliver water, heat, power and light without its corporate limits, and may operate transportation lines without the municipality within such limits as may be prescribed by law.   The method of financing the acquisition and operation of a public utility is dealt with in section 24, and in section 25 limitations are laid upon the exercise of the powers conferred.   Section 28, because its provisions are relied upon by the plaintiff in certiorari, is set out:

"SEC. 28. No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks or conduits, without the

consent of the duly constituted authorities of such city, village, or township; nor to transact a local business therein without first obtaining a franchise therefor from such city, village or township. The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

With regard to the subject we are considering, the impressive thing about these constitutional provisions is that they recognize and affirm the theory that cities owe their origin and their powers to the legislature. And while cities may refer power to do some things, as, for example, power to acquire certain public works, directly to some of these constitutional provisions, it must be admitted that all of these provisions should be considered with reference to the fact that legislative power is vested in the legislature and that the Constitution recognizes, as former Constitutions have recognized, the general control of the legislature over cities. That the legislative power ought to be exercised in such manner as to preserve the right of local self-government is a doctrine which in application in no way modifies or qualifies the idea of the general legislative power of creation and control. If, therefore, the city of Kalamazoo, in its city commission, has power—

"to regulate the rates of all public utility companies using the streets, alleys or public places of the city"

in any case, it is a derived, a delegated, power, the source of which is the Constitution and the general law under which it is organized.

We might go further and point out, what is true, that power to regulate rates of public utility companies is not a power necessary to local self-government, denial of which, or interference with the exercise of which by the legislature, would be interference with local self-control. Counsel for the city, however, rely upon a derived, a delegated, power.

Has the legislature in the general law delegated to cities the power to fix rates—compulsory rates—for public utilities, or any of them? It is not contended that it has done so in terms. The contention made in respect to the power to fix the price of gas is, as has been pointed out, based upon the rather plenary grant of power to provide for the use, regulation and control of streets. But the fixing of a compulsory price for gas cannot be reasonably referred to use, regulation or control of streets. The gas company derives its right to make and sell gas, not from the city, but from the State. Beyond this, we held in *Traverse City* v. *Railroad Commission*, 202 Mich. 575, 581, and in *City of Kalamazoo* v. *Kalamazoo Circuit Judge, supra,* with a reference to decided cases, that such a power, if delegated, must be delegated in express terms. As affecting the question before us, the city does not appear to have derived any new powers of legislation with its new charter. As in *City of Kalamazoo* v. *Kalamazoo Circuit Judge,* its contentions are overruled.

The matter and language of this opinion are largely those of the late Justice OSTRANDER, which are now formulated into this opinion of the court.

Judgment is affirmed, with costs to defendant in certiorari.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.