**Michigan Supreme Court**
**Lansing, Michigan**

# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

ASSOCIATED BUILDERS AND CONTRACTORS v CITY OF LANSING

Docket No. 149622. Argued October 15, 2015 (Calendar No. 8). Decided May 17, 2016.

Associated Builders and Contractors brought an action in the Ingham Circuit Court against the city of Lansing, alleging that the city exceeded its authority by enacting an ordinance that established a prevailing wage for contracts, agreements, or other arrangements for construction on behalf of the city. The court, Clinton Canady III, J., granted plaintiff's motion for summary disposition on the basis of *Attorney General ex rel Lennane v Detroit*, 225 Mich 631 (1923), which held that, under Michigan's 1908 Constitution, the setting of wage rates was a matter of state concern into which a city could not intrude. The Court of Appeals, BECKERING and SHAPIRO, JJ. (SAWYER, P.J., dissenting), reversed and remanded, stating that changes in the legal landscape had rendered *Lennane* obsolete and inapplicable. 305 Mich App 395 (2014). The Supreme Court granted defendant's application for leave to appeal. 497 Mich 920 (2014).

In an opinion by Chief Justice YOUNG, joined by Justices MARKMAN, MCCORMACK, VIVIANO, BERNSTEIN, and LARSEN, the Supreme Court *held*:

The Court of Appeals correctly concluded that the city of Lansing had the authority under Const 1963, art 7, § 22 to enact an ordinance that established a prevailing wage. *Lennane* both applied to this factual circumstance and had not yet been overruled. Although *Lennane* was, in fact, incongruent with Michigan law as reflected in the current Constitution, the Court of Appeals had no authority to disregard *Lennane*. The Court of Appeals therefore erred by disregarding and refusing to apply *Lennane*. Because of this error, the Court of Appeals' decision was vacated but the result was affirmed.

1. *Lennane* was decided under the 1908 Constitution, a provision of which stated that the electors of each city and village had the power to frame, adopt, and amend its charter and to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of the state. Interpreting this provision, the *Lennane* Court held that the regulation of wages paid to third-party employees working on municipal construction contracts was exclusively a matter of state, not municipal, concern. In concluding that a municipality's powers did not include the power to enact such laws, the *Lennane* Court appears to have concluded that municipalities have only the powers relating to local concerns that were not expressly denied, and could wield only those powers expressly and explicitly granted. This conclusion found no support in the 1963 Constitution. Article 7, § 22 of the 1963 Constitution provides that the

electors of each city and village have the power and authority to frame, adopt, and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the Legislature for the government of the city or village. It further provides that each city and village has the power to adopt resolutions and ordinances relating to its municipal concerns, property, and government, subject to the Constitution and law, and that no enumeration of powers granted to cities and villages in the Constitution shall limit or restrict the general grant of authority conferred by article 7, § 22. The 1963 Constitution also contained a new provision, article 7, § 34, which stated that the provisions of the Constitution and law concerning counties, townships, cities, and villages must be construed liberally in their favor, and that the powers granted to counties and townships by the Constitution and by law included those fairly implied and not prohibited by the Constitution. The wages paid to employees of contractors working on municipal contracts had a self-evident relationship to municipal concerns, property, and government. Furthermore, the plain language of the 1963 Constitution grants cities and villages broad powers over municipal concerns, property, and government whether those powers are enumerated or not, and the relevant constitutional language does not state that a matter cannot be a municipal concern if the state might also have an interest in it. Thus, if *Lennane*'s holding was ever on firm constitutional ground, it no longer had sound footing after the people ratified the 1963 Constitution, and no reliance interests cautioned against overruling *Lennane*. Accordingly, the rule in *Lennane* that city and village governments may not enact ordinances or charter provisions governing the wages paid to third-party employees working on municipal construction contracts was overruled.

2. The Court of Appeals erred by failing to follow *Lennane*. While developments over the past century undercut the foundation on which *Lennane* stood, its holding was never explicitly superseded by the ratifiers of the 1963 Constitution or by the Legislature, nor was it overruled by the Supreme Court. The Court of Appeals was bound to follow decisions of the Supreme Court except when those decisions have clearly been overruled or superseded, and it was not authorized to anticipatorily ignore a Supreme Court decision if it determined that the foundations of the decision had been undermined. While the Court of Appeals decision reached the correct result, it erred by usurping the Supreme Court's role under the Constitution.

Court of Appeals judgment vacated; result affirmed; case remanded to the Ingham Circuit Court for further proceedings.

Justice ZAHRA, concurring in the result, agreed that the prevailing-wage ordinance was a valid exercise of the city's authority under Const 1963, art 7, § 22, and also agreed that the outcome in *Lennane* should be overruled. He wrote separately to address the powers granted to municipalities by the 1963 Constitution, stating that municipalities may only act pursuant to express grants of power and that the courts were constitutionally mandated to construe that express power liberally.

©2016 State of Michigan

# OPINION

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

FILED  May 17, 2016

STATE OF MICHIGAN

SUPREME COURT

ASSOCIATED BUILDERS AND
CONTRACTORS,

Plaintiff-Appellant,

v

No. 149622

CITY OF LANSING,

Defendant-Appellee.

BEFORE THE ENTIRE BENCH

YOUNG, C.J.

Plaintiff appeals by leave the Court of Appeals' opinion in *Associated Builders & Contractors v City of Lansing*.[1] Plaintiff claims that the city of Lansing's Ordinance 206.18(a) is unconstitutional under this Court's 1923 decision *Attorney General ex rel Lennane v Detroit*,[2] and is an unlawful usurpation of state power. The Court of Appeals

---

[1] *Associated Builders & Contractors v City of Lansing*, 305 Mich App 395; 853 NW2d 433 (2014).

[2] *Attorney General ex rel Lennane v Detroit*, 225 Mich 631; 196 NW 391 (1923).

majority disagreed, and ruled that subsequent changes to state law had caused *Lennane* to be "superseded." The Court of Appeals erred by exceeding its powers for refusing to follow a decision from this Court that both applied and had not been overruled. Even so, we now take this opportunity to overrule *Lennane* because subsequent constitutional changes[3] have undercut its viability. We therefore vacate the Court of Appeals' decision but affirm the result for the reasons stated below.

## FACTS AND PROCEDURAL HISTORY

Defendant city of Lansing enacted an ordinance requiring contractors working on city construction contracts to pay employees a prevailing wage. The ordinance states in relevant part:

> No contract, agreement or other arrangement for construction on behalf of the City and involving mechanics and laborers, including truck drivers of the contractor and/or subcontractors, employed directly upon the site of the work, shall be approved and executed by the City unless the contractor and his or her subcontractors furnish proof and agree that such mechanics and laborers so employed shall receive at least the prevailing wages and fringe benefits for corresponding classes of mechanics and laborers, as determined by statistics compiled by the United States Department of Labor and related to the Greater Lansing area by such Department.[4]

Plaintiff, a trade association, filed suit against Lansing, arguing that the ordinance is unconstitutional because municipalities do not have the authority to adopt laws regulating the wages paid by third parties, even where the relevant work is done on municipal contracts paid for with municipal funds. Plaintiff relies primarily on this

---

[3] See Const 1963, art 7, §§ 22, 34.

[4] Lansing Ordinances, § 206.18a.

2

Court's 1923 *Lennane* decision, which held that, under this state's 1908 Constitution, the city of Detroit could not enact an essentially analogous ordinance and related city charter provision.[5]  In response, defendant argued that the legal landscape, particularly the ratification of a new constitution in 1963, had changed so radically that *Lennane* was no longer relevant in determining the question at hand.  The trial court granted summary disposition to plaintiff, ruling that *Lennane* made it clear that the regulation of wages was a matter of state, not municipal, concern, under the Michigan Constitution[6] and the Home Rule Act,[7] though it did take note of *Lennane*'s "archaic nature."

---

[5] *Lennane*, 225 Mich at 641.

[6] Most relevant to our analysis, Article 7, § 22 of the 1963 Constitution provides:

> Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village.  Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law.  No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section.

[7] MCL 117.4j.  We decide this case under the Michigan Constitution, but the similar text of the Home Rule Act informs our decision.  In relevant part, the Act states:

> Each city may in its charter provide:
>
> * * *
>
> For the exercise of all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not; for any act to advance the interests of the city, the good government and prosperity of the municipality and its inhabitants and through its regularly constituted

The Court of Appeals panel reversed the lower court in a published, split decision.[8]  Although the panel majority stated that its opinion "neither overrule[s] *Lennane* nor deviate[s] from the rule of stare decisis,"[9] the majority nevertheless ruled that changes in the legal landscape had, in fact, rendered *Lennane* obsolete and inapplicable.  The panel stated that "the foundation upon which *Lennane* stood has been rejected by our Supreme Court."[10]  One judge dissented, arguing that the majority was unlawfully striking down a decision by this Court because *Lennane* had never been overruled—either implicitly or explicitly—or rendered inapplicable.  The dissenting opinion stated:

> [T]he Court's conclusion in *Lennane* that this is a matter of state concern has never been overruled.  Therefore . . . defendant's powers . . . do not extend to this ordinance until and unless the Supreme Court revisits its conclusion in *Lennane*, or the Legislature explicitly grants cities the power to adopt prevailing wage ordinances.[11]

This appeal followed.

---

authority to pass all laws and ordinances relating to its municipal concerns subject to the constitution and general laws of this state.

[8] *Associated Builders*, 305 Mich App at 398.

[9] *Id*. at 411.

[10] *Id*.  It is because the panel below failed to give deference to the precedential authority of our opinions that we vacate the opinion of the Court of Appeals.

[11] *Id*. at 421 (SAWYER, J., dissenting).

STANDARD OF REVIEW

This Court reviews de novo both questions of constitutional law and a trial court's decision on a motion for summary disposition.[12]

ANALYSIS

We take this opportunity to overrule *Lennane*. *Lennane*'s conception of municipal power may or may not have been well-grounded in Michigan's 1908 Constitution and the legal landscape of the time, but it is certainly incongruent with the state of our law as reflected in our current Constitution. We therefore conclude that *Lennane* has no continuing viability in light of the adoption of our 1963 Constitution.

The 1908 Constitution read in relevant part:

> Under such general laws, the electors of each city and village shall have power to frame, adopt, and amend its charter, . . . and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this state.[13]

Interpreting this constitutional provision, the *Lennane* Court held that the regulation of wages paid to third-party employees working on municipal construction

---

[12] *Dep't of Transp v Tompkins*, 481 Mich 184, 190; 749 NW2d 716 (2008).

[13] Const 1908, art 8, § 21.

contracts was exclusively a matter of "state," not "municipal," concern.[14]   Quoting

liberally from a 1919 case, *Kalamazoo v Titus*,[15] the *Lennane* Court stated:

> "The charter provision, the ordinance, the argument made for the city, indeed, the suit itself, reflect a popular interest in, and, we conceive, a popular misunderstanding about, the subject of home rule, so-called, in cities.  There is apparent a widely spread notion that lately, in some way, cities have become possessed of greatly enlarged powers, the right to exercise which may come from mere assertion of their existence and the purpose to exercise them.  Whether these powers are really inherent in the community, but their exercise formerly was restrained, or are derived from a new grant of power by the State, or may be properly ascribed to both inherent right and to a new grant, are questions which do not seem to bother very much the advocates of the doctrine that they in any event exist.  *On the other hand, there is expression of grave doubt whether, in the view of the law, there has been any enlargement or extension of the subjects of municipal legislation and control or of the powers of cities except as those subjects and powers are specifically enumerated and designated in the Constitution itself and in the home rule act*."[16]

By quoting *Titus* at such length, the *Lennane* Court appears to have been posing

itself a question: under the 1908 Constitution, what, exactly, are the default powers of

municipalities?  Do municipalities have all powers relating to local concerns that are not

expressly denied, or can they wield only those powers expressly and explicitly granted?

In concluding that a municipality's powers did not include the power to enact laws

---

[14] *Lennane*, 225 Mich at 638 ("The police power rests in the State. . . .   While the municipality in the performance of certain of its functions acts as agent of the State it may not as such agent fix for the State its public policy.  That power has not been delegated to these agents of the State.  Unless delegated in some effective way the police power remains in the State.").

[15] *Kalamazoo v Titus*, 208 Mich 252; 175 NW 480 (1919).

[16] *Lennane*, 225 Mich at 639, quoting *Titus*, 208 Mich at 260-261 (emphasis added; citation omitted).

regulating the wages paid to third-party employees working on municipal construction contracts, the *Lennane* Court appears to have chosen the latter answer.

This conclusion finds no support in the 1963 Constitution. Article 7, § 22 of the 1963 Constitution provides:

> Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or *enacted* by the legislature for the government of the city or village. *Each such city and village shall have power to adopt resolutions* and ordinances relating to its municipal concerns, *property and government*, *subject to the constitution and law*. *No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section*.[17]

Explaining these highlighted changes, the Address to the People states:

> This is a revision of Sec. 21, Article VIII, of the present [1908] constitution and reflects Michigan's successful experience with home rule. *The new language is a more positive statement of municipal powers, giving home rule cities and villages full power over their own property and government, subject to this constitution and law*.[18]

The 1963 Constitution also contained a new provision, Article 7, § 34:

> The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor. Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by this constitution.[19]

---

[17] The new language added is highlighted.

[18] 2 Official Record, Constitutional Convention 1961, p 3393 (emphasis added).

[19] Const 1963, art 7, § 34. The Address to the People for this provision explains:

> *This is a new section intended to direct the courts to give a liberal or broad construction to statutes and constitutional provisions concerning all local governments*. Home rule cities and villages already enjoy a broad

If it was ever the case, we conclude that, given the newly added language that expresses the people's will to give municipalities even greater latitude to conduct their business, there is simply no way to read our current constitutional provisions and reach the conclusion that "there is . . . grave doubt whether . . . there has been any enlargement or extension of the subjects of municipal legislation and control or of the powers of cities except as those subjects and powers are specifically enumerated and designated in the Constitution itself and in the home rule act."[20] Under our current Constitution, there is simply no room for doubt about the expanded scope of authority of Michigan's cities and villages: "No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section."[21] Moreover, these powers over "municipal concerns, property and government" are to be "liberally construed."[22] In contrast, the *Lennane* Court briefly interpreted the more limited language in the 1908 Constitution—granting cities and villages the right to "pass all laws and ordinances relating to its municipal concerns"—decided upon a narrow conception of local authority, and declared, with scant analysis, that a prevailing wage law similar to this one was exclusively a matter of "state concern."

---

construction of their powers and *it is the intention here to extend to counties and townships within the powers granted to them equivalent latitude in the interpretation of the constitution and statutes.* [2 Official Record, Constitutional Convention 1961, p 3395 (emphasis added).]

[20] *Lennane*, 225 Mich at 639.

[21] Const 1963, art 7, § 22.

[22] Const 1963, art 7, § 34.

8

But the wages paid to employees of contractors working on *municipal contracts* have a self-evident relationship to "municipal concerns, property, and government," if those words are even reasonably, if not liberally, construed. Those wage rates concern how a municipality acts as a market participant, spending its own money on its own projects.[23] If a municipality has broad powers over local concerns, it certainly has the power to set terms for the contracts it enters into with third parties for its own municipal projects—including provisions relating to the wages paid to third-party employees. This way the municipality controls its own money, and presumably expresses its citizens' preference as to what those who work on *public* projects should be paid. We see nothing in these municipal aims that falls outside the ambit of Article 7, § 22 of the 1963 Constitution.[24]

---

[23] *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "municipal" as "of, relating to, or characteristic of a municipality," which is "a primarily urban political unit having corporate status and usu. powers of self-government." The same dictionary defines "property" as "something owned or possessed," and defines "government" as "the act or process of governing . . . authoritative direction or control." All three of these definitions are broad enough to encompass the conditions a municipality places in its municipality-funded construction contracts, including conditions as to what contractors on those projects pay their workers. These contracts clearly "relate to" the municipality, in that they are public projects; they concern a municipality's own money and property, things that it clearly "owns or possesses"; and a municipality certainly has "authoritative direction or control" over its own public-works projects.

[24] Nothing in this opinion should be interpreted to imply that municipalities are sovereign entities with extraconstitutional powers or the ability to negate legislative action. See Const 1963, art 7, § 22 ("Each . . . city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, *subject to the constitution and law*.") (emphasis added).

9

Furthermore, *Lennane*'s holding appears to rest on an implicit dichotomy: if something is a matter of "state concern" it cannot also be a matter of "local concern."[25] But this binary understanding does not comport with the plain language of the 1963 Constitution, which grants cities and villages broad powers over "municipal concerns, property and government" whether those powers are enumerated or not. The relevant constitutional language does not state that a matter cannot be a "municipal concern" if the state might also have an interest in it.[26] While a binary understanding of state and local governmental power might have been common 100 years ago,[27] the ratifiers of the 1963

---

[25] It is somewhat difficult to parse this aspect of *Lennane*'s holding, because the *Lennane* Court never explains precisely why the wages paid to third-party employees working on municipal construction contracts are matters of state concern.

[26] Indeed, in this very area of prevailing wages, the Legislature explicitly omits municipalities from its list of affected governmental "contracting agents" in the state prevailing wage statute, MCL 408.551(c). This drafting decision strongly suggests an independent local role for setting wage rates on municipal contracts. At the very least, there is no evidence that the Legislature intended to preempt municipal authority in this area.

[27] Along with *Lennane*, several older cases appear to adopt this binary conception of state and local governance. See, e.g., *People ex rel Bd of Detroit Park Commissions v Detroit Common Council*, 28 Mich 227, 240 (1873) ("Whoever insists upon the right of the State to interfere and control by cumpulsory [sic] legislation the action of the local constituency in matters exclusively of local concern, should be prepared to defend a like interference in the action of private corporations and of natural persons."); *Thomas v Wayne Co Bd of Supervisors*, 214 Mich 72, 84; 182 NW 417 (1921) ("[Establishing and maintaining a tract index] is purely a matter of local concern. Neither the state as a whole nor any person other than a taxpayer of Wayne county [sic] has any interest in the matter."). Since the passage of the 1963 Constitution, however, Michigan courts have not relied upon this archaic, binary conception of state and local power. See *Airlines Parking, Inc v Wayne Co*, 452 Mich 527, 539; 550 NW2d 490 (1996) ("[M]atters of local concern may also be matters of state concern."). In the face of explicit textual direction to the contrary, we decline to impose such an anachronistic conception of state and local government on our current constitution.

10

Constitution do not appear to have worked under the same apprehension—instead we are left with their words: "The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor."[28]

Thus, if *Lennane*'s holding was ever on firm constitutional ground, it no longer had sound footing after the people ratified the 1963 Constitution. We agree with the Court of Appeals majority that subsequent changes in the law have undercut *Lennane*'s foundations.[29] Accordingly, we conclude that "changes in the law . . . no longer justify the questioned decision."[30] Nor do we believe that any reliance interests affected by this

---

[28] Const 1963, art 7, § 34.

[29] The Court of Appeals panel majority stated that "the foundation upon which *Lennane* stood has been rejected by our Supreme Court." *Associated Builders*, 305 Mich App at 411. The panel majority relied on language from decisions of this Court, including *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 253-254; 566 NW2d 514 (1997) ("Home rule cites have broad powers to enact ordinances for the benefit of municipal concerns under the Michigan Constitution . . . . The home rule cities act is intended to give cities a large measure of home rule. It grants general rights and powers subject to enumerated restrictions.") (citations omitted), *Detroit v Walker*, 445 Mich 682, 690; 520 NW2d 135 (1994) ("[I]t is clear that home rule cities enjoy not only those powers specifically granted, but they may also exercise all powers not expressly denied. Home rule cities are empowered to form for themselves a plan of government suited to their unique needs and, upon local matters, exercise the treasured right of self-governance.") (citation omitted), and *AFSCME v Detroit*, 468 Mich 388, 410; 662 NW2d 695 (2003), quoting *Walker*, 445 Mich at 690 ("We have held that 'home rule cities enjoy not only those powers specifically granted, but they may also exercise all powers not expressly denied.' "). While all of these cases use clear language acknowledging the broad grants of municipal authority in the 1963 Constitution and the Home Rule Act, none of them relate directly to the problem at issue in this case or purport to overrule *Lennane*. These cases support the point made by the panel. However, rather than rely primarily on the gloss in some of our past cases, we take this opportunity to overrule *Lennane* anchoring our decision on the text of the 1963 Constitution itself.

[30] *Robinson v Detroit*, 462 Mich 439, 464; 613 NW2d 307 (2000). While the "first inquiry" in considering whether to overrule a prior decision of this Court is generally

Court's overruling *Lennane* caution against our analysis. Reliance interests, while important to the rule of stare decisis, must fall to the wayside when this Court is addressing actual changes in the text of our constitutions. We therefore declare that *Lennane* has no continuing viability and repudiate its conception of municipal authority in light of the ratification of the 1963 Constitution. The rule in *Lennane*—that city and village governments may not enact ordinances or charter provisions governing the wages paid to third-party employees working on municipal construction contracts—is overruled.

Nonetheless, we also agree with Court of Appeals dissent's following assessment of the binding nature of *Lennane* before the instant decision:

> [T]he Court's conclusion in *Lennane* that this is a matter of state concern has never been overruled. Therefore, even if we apply a "liberal construction" to defendant's powers, they do not extend to this ordinance until and unless the Supreme Court revisits its conclusion in *Lennane*, or the Legislature explicitly grants cities the power to adopt prevailing wage ordinances.[31]

While it is inarguable that developments over the past century have undercut the foundation upon which *Lennane* stood, its holding was never explicitly superseded by the

---

whether that prior decision was wrongly decided, *Sington v Chrysler Corp*, 467 Mich 144, 162; 648 NW2d 624 (2002), in cases such as this where the legal landscape has changed dramatically, it adds little to the inquiry to determine whether the prior decision was correctly decided under obsolete law. See *Robinson*, 462 Mich at 455 (concluding that *Fiser v Ann Arbor*, 417 Mich 461; 339 NW2d 413 (1983), "may have been proper when decided, but it is no longer 'good law' after *Ross* [*v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984)]"). We note, however, that *Lennane* offered precious little textual analysis for its conclusion, so to the extent that the phrase "municipal concerns" remains unchanged between the 1908 and 1963 Constitutions, *Lennane*'s analysis of that term is not particularly illuminating.

[31] *Associated Builders*, 305 Mich App at 421 (SAWYER, J., dissenting).

ratifiers of the 1963 Constitution or by the Legislature, nor was it overruled by this Court. The Court of Appeals is bound to follow decisions by this Court except where those decisions have *clearly* been overruled or superseded,[32] *and is not authorized to anticipatorily ignore our decisions where it determines that the foundations of a Supreme Court decision have been undermined.*[33] Thus, while we agree with the result of the Court of Appeals' decision, we disapprove of its usurpation of this Court's role under our Constitution.

## CONCLUSION

*Lennane*, whatever its merits when it was decided, has been undercut by the adoption of the 1963 Constitution. We therefore overrule *Lennane*. Under our Constitution, cities and villages may enact ordinances relating to "municipal concerns,

---

[32] Although one can determine with relative ease whether a case was overruled by this Court, we acknowledge that it is not always so easy to determine whether a case has been "clearly overruled or superseded" by intervening changes in the positive law. At one end of the spectrum are situations in which the Legislature has entirely repealed or amended a statute to expressly repudiate a court decision. In such situations, lower courts have the power to make decisions without being bound by prior cases that were decided under the now repudiated previous positive law. The other end of the spectrum is harder to define; however, as it relates to this case, since both the 1908 Constitution and the 1963 Constitution contain the phrase at issue in *Lennane*—"relating to its municipal concerns"—the Court of Appeals was bound by *Lennane* because it had not been clearly superseded.

[33] "While the Court of Appeals may properly express its belief that a decision of this Court was wrongly decided or is no longer viable, that conclusion does not excuse the Court of Appeals from applying the decision to the case before it." *Boyd v W G Wade Shows*, 443 Mich 515, 523; 505 NW2d 544 (1993), overruled on other grounds by *Karaczewski v Farbman Stein & Co*, 478 Mich 28; 732 NW2d 56 (2007), itself overruled in part by *Bezeau v Palace Sports & Entertainment, Inc*, 487 Mich 455; 795 NW2d 797 (2010).

13

property and government," including ordinances and charter provisions regulating the wages paid to third-party employees working on municipal construction contracts, "subject to the constitution and law."[34]

The Court of Appeals erred, however, by disregarding precedent from this Court that has not been clearly overruled by the Court or superseded by subsequent legislation or constitutional amendment. "[I]t is the Supreme Court's obligation to overrule or modify case law if it becomes obsolete, and until this Court takes such action, the Court of Appeals and all lower courts are bound by that authority."[35] Because of this error, we vacate the Court of Appeals' decision but affirm the result, for the reasons stated above.

> Robert P. Young, Jr.
> Stephen J. Markman
> Bridget M. McCormack
> David F. Viviano
> Richard H. Bernstein
> Joan L. Larsen

---

[34] Const 1963, art 7, § 22.

[35] *Boyd*, 443 Mich at 523.

14

STATE OF MICHIGAN

SUPREME COURT

ASSOCIATED BUILDERS &
CONTRACTORS,

        Plaintiff-Appellant,

v                           No. 149622

CITY OF LANSING,

        Defendant-Appellee.

_____

ZAHRA, J. (*concurring in result*).

I agree with the majority's ultimate conclusion that the prevailing-wage ordinance is expressly authorized by Const 1963, art 7, § 22. I write separately to address the powers granted to municipalities by the 1963 Constitution.

Municipalities have never possessed inherent authority not expressly granted by the Constitution or laws of Michigan, and do not have it today. It was not until the 1908 Constitution that municipalities were granted the power of self-governance, a concept known as "home rule."

The 1908 Constitution required the Legislature to enact a general law for the incorporation of cities and villages:

> The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts.[1]

---

[1] Const 1908, art 8, § 20.

Section 21 of the 1908 Constitution also provided the first "charter" provision, vesting in municipalities the power of home rule. This provision allowed municipalities to frame, adopt, and amend their charters, and states:

> Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the constitution and general laws of this state.[2]

The Address to the People accompanying the 1908 Constitution explained the addition of constitutional provisions pertaining to home rule—a concept not found in prior constitutions—in detail:

> The provisions herein contained are designed to meet the modern conditions affecting municipal affairs; to authorize through appropriate legislation that which has heretofore been denominated "Home Rule."
>
> These provisions constitute a marked advance from the present constitutional provisions relating to cities and villages by doing away with the principle of classification and with special charters, granted and subject to amendment only by the state legislature. The purpose is to invest the legislature with power to enact into law such broad general principles relative to organization and administration as are or may be common to all cities and all villages, each city being left to frame, adopt and amend those charter provisions which have reference to their local concerns. The most prominent reasons offered for this change are that each municipality is the best judge of its local needs and the best able to provide for its local necessities; that inasmuch as special charters and their amendments are now of local origin, the state legislature will become much more efficient and its terms much shorter if the labor of passing upon the great mass of detail incident to municipal affairs is taken from that body and given into the hands of the people primarily interested.

---

[2] Const 1908, art 8, § 21.

2

Under these provisions, cities and villages, as under the present [1850] constitution, will remain subject to the constitution and all the general laws of the state.[3]

Thus, under the 1908 Constitution, municipalities had for the first time the power to govern their own affairs. But this constitutional change did not grant municipalities inherent authority based solely on the assertion of their existence. Instead, this was a specific but limited grant of the power of home rule that was "subject to the constitution and general laws of this state."[4] The grant of home rule expressly provides municipalities with greater control over local affairs, but it did not create any inherent authority in municipalities. The Court in *Attorney General ex rel Lennane v Detroit* recognized this when it dismissed the notion that municipalities have inherent authority. The powers are limited to those "specifically enumerated and designated in the Constitution itself and in the home rule act."[5]

The 1963 Constitution contains a similar charter provision to that found in the 1908 Constitution that specifically grants the power of home rule. The 1963 Constitution also added a provision that states, "[n]o enumeration of powers granted to cities . . . in this constitution shall limit . . . the general grant of authority conferred by [Const 1963, art 7, § 22]."[6] This language merely guides courts on how to construe this constitutional provision. Despite the express grant of authority conferred by § 22, the 1963

---

[3] Official Record, Constitutional Convention 1907-1908, pp 42-43.

[4] Const 1908, art 8, § 21.

[5] *Attorney General ex rel Lennane v Detroit*, 225 Mich 631, 639; 196 NW 391 (1923), quoting *Kalamazoo v Titus*, 208 Mich 252, 261; 175 NW 480 (1919).

[6] Const 1963, art 7, § 22.

3

Constitution contains other enumerated powers granted to municipalities.[7] As it plainly states, the last sentence of article 7, § 22 makes it clear that no enumeration of power in other parts of the 1963 Constitution "shall limit . . . the general grant of authority conferred by . . . section [22]." This language does not confer a new grant of power. Instead, it is a rule of construction. Municipalities are not sovereign entities that have inherent authority; they are creations of the state that derive their power and authority from the state.[8] We reiterated this fundamental principle in *City of Taylor v Detroit Edison Co*:

> "[Local governments] have no inherent jurisdiction to make laws or adopt regulations of government; they are governments of enumerated powers, acting by a delegated authority; so that while the State legislature may exercise such powers of government coming within a proper designation of legislative power as are not expressly or impliedly prohibited, the local authorities can exercise those only which are expressly or impliedly conferred, and subject to such regulations or restrictions as are annexed to the grant."[9]

The 1963 Constitution provided another rule of construction not found in previous constitutions that proves helpful to the disposition of this case. Article 7, § 34 of the 1963 Constitution directs that the laws and constitutional provisions relating to the specific grant of municipal powers be liberally construed:

---

[7] See, e.g., Const 1963, art 7, § 23 ("Any city or village may acquire . . . parks, boulevards, cemeteries, hospitals and all works which involve the public health or safety."); Const 1963, art 7, § 24 ("Subject to this constitution, any city or village may acquire . . . public service facilities . . . .").

[8] See *Bivens v Grand Rapids*, 443 Mich 391, 397; 505 NW2d 239 (1993).

[9] *City of Taylor v Detroit Edison Co*, 475 Mich 109, 115; 715 NW2d 28 (2006), quoting *Titus*, 208 Mich at 262.

4

The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor. Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by this constitution.[10]

Applying this rule of construction to the present case, the city of Lansing's prevailing-wage ordinance survives constitutional challenge. This ordinance requires that private employers pay their employees the local prevailing wage when contracting with Lansing for municipal projects.[11] This is strikingly similar to the ordinance at issue in *Lennane.* While the *Lennane* Court concluded that the prevailing-wage ordinance before it was a state concern outside the power of a municipality to regulate, the Court offered no reasoning to support its conclusion. Significantly, *Lennane* was decided under the 1908 Constitution, which did not direct a liberal construction of home rule authority. And while we give *Lennane* deference, the 1963 Constitution directs us to interpret matters of home rule liberally. Following this direction, it is apparent that the prevailing-wage ordinance before us today is a matter of municipal concern.[12]

In sum, I agree with the majority that under the 1963 Constitution the city of Lansing's prevailing-wage ordinance is a valid exercise of the specific grant of authority

---

[10] Const 1963, art 7, § 34.

[11] Lansing Ordinances, § 206.18(a).

[12] I also agree with the Court of Appeals' conclusion that preemption does not apply. Neither the Minimum Wage Law, MCL 408.381 *et seq.*, which was repealed in 2014, nor the Michigan prevailing wage act, MCL 408.551 to MCL 408.558, prohibits municipalities from setting prevailing wage rates for municipal contracts or agreements. Additionally, no state law occupies the entire field of establishing prevailing wages. See *Associated Builders & Contractors v City of Lansing*, 305 Mich App 395, 414; 853 NW2d 433 (2014).

5

found in Const 1963, art 7, § 22. I also agree with the majority that the outcome in *Lennane* should be overruled. Municipalities may only act pursuant to express grants of power. We are constitutionally mandated to construe that express power liberally. To this extent, I concur in the majority opinion.

Brian K. Zahra